## THE NEWARK FIRE INSURANCE COMPANY

### v.

## THOMAS J. SAMMONS ET AL.

1. INSURANCE—CANCELLATION OF POLICY.—It is undoubtedly the right of the parties to an insurance policy, to provide for the termination of the insurance at any time at the option of either party, and where the policy provides for a termination of the insurance upon notice, the giving of notice is all that is required. The repayment of the unearned premium is held in this case to be merely an incident, not affecting the main object, the termination of the contract.

2. NOTICE TO BROKER WHO PROCURED INSURANCE.—The policy provided that if the insurance was procured by a broker he should be regarded as the agent of the assured for all matters relating to such insurance. The cancellation of the insurance is a " matter relating to such insurance," and notice to such broker by the insurance company to cancel such insurance must be held to be notice to the assured.

APPEAL from the Superior Court of Cook county ; the Hon. JOSEPH E. GARY, Judge, presiding. Opinion filed July 25, 1882

Newark Fire Ins. Co. v. Sammons.

This was an action of assumpsit, brought by Thomas J. Sammons and Egbert B. Clark, copartners, doing business under the firm name of Sammons, Clark & Co., against the Newark Fire Insurance Company, to recover for a loss under a policy of insurance against fire, on the plaintiffs' picture-frame manufactory, and contents.  Up to a short time previous to December 14, 1880, the date of the policy, the firm consisted of the plaintiffs and one E. D. Chapman, they having at the time some sixteen or eighteen policies of insurance on said property in different companies.  Said Chapman retiring from the firm, one Kennedy, of the firm of E. E. Ryan & Co., insurance agents, representing a portion of said companies, suggested to the plaintiffs that it was advisable to have the consent of the several companies to the change in the plaintiffs' firm indorsed on the policies, and the plaintiffs thereupon delivered all of said policies to said Kennedy, requesting him to procure such indorsement.  Consent was duly obtained by Kennedy as to all of said policies except one for $1,000, which was canceled, and in place of the policy so canceled, Kennedy applied to O. W. Barrett, the defendant's local agent in Chicago, and obtained from him for the plaintiffs, the policy in suit for the same amount.

No premium was paid to Barrett by either the plaintiffs or Kennedy, although it appears that Kennedy or his firm had in their hands a sum of money belonging to the plaintiffs, partly sufficient to pay said premium, resulting from the unearned premium returned on the policy canceled.  It further appears that both Barrett and Ryan & Co. were doing business, not only as agents representing particular companies, but also as insurance brokers, and in that capacity frequently obtained policies from each other; and that there existed between them an arrangement or custom to keep an account of premiums and make monthly settlements.  The policy in question contained, among other conditions, the following:

"5.  RELATIVE TO ISSUE AND CANCELLATION OF POLICY.

"1. If any broker or other person than the assured have procured this policy, or any renewal thereof, or any indorse-

ment thereon, he shall be deemed to be the agent of the assured, and not of this company, in any transaction relating to the insurance.

"2. This insurance may be terminated at any time by request of the assured, or by the company, on giving notice to that effect. On surrender of the policy, the company shall refund any premium that may have been paid, reserving the usual short rates in the first case, and *pro rata* rates in the other case."

Said risk was immediately reported by Barrett to the defendant's general agent, who at once disapproved of it and ordered the policy canceled. The evidence tends to show that Barrett thereupon gave notice to Ryan & Co. of the defendant's election to cancel the policy, and demanded of them its return, but as to whether such notice was given before or after Ryan & Co. had actually delivered the policy to the plaintiffs, the evidence is uncertain and somewhat conflicting. The policy, however, was not returned or surrendered to the defendant, nor was any premium paid or tendered by the defendant to Ryan & Co., or to the plaintiffs.

On the 28th day of January, 1881, the property covered by the policy was destroyed by fire, and up to the date of said loss, the plaintiffs themselves had no actual notice of the defendant's election to cancel the policy, nor had they paid the defendant any portion of the premium; but after the loss, said premium was tendered by them to the defendant.

Among other instructions, the defendant asked the court to give to the jury the following, which were refused:

3. "The jury are further instructed that, by the terms of the policy sued on and offered in evidence in this case, the defendant had the right to cancel said policy and terminate the insurance thereunder, at any time before a loss occurred, by giving notice to that effect to the plaintiffs, or their authorized agent, and returning premiums paid to the defendant, if any; and if the jury believe from the evidence in this case that said defendant did give notice of the cancellation of said policy and the termination of the insurance thereunder, prior to the loss, by delivering such notice to the authorized agent of said

plaintiffs, then they are instructed that the plaintiffs can not recover in this case, and your verdict must be for the defendant. '

"If the jury believe from the evidence in this case that the policy sued on in this case was procured for the plaintiffs by a broker or by any other person not an agent of the defendant, and that no premium for said policy was ever paid to said insurance company or its agent, and if the jury also believe from the evidence in this case, that the defendant gave notice to such broker or other person so procuring such policy for said plaintiffs, of the cancellation of the insurance prior to the loss, then they are instructed that the plaintiffs can not recover in this case, and your verd'ict must be for the defendant."

The defendant also asked the court to give the jury the following instruction:

6.    "If the jury believe from the evidence in this case, that the policy in controversy was delivered by O. W. Barrett to E. E. Ryan & Co. or one of the members of said last named firm, and that said policy was procured by said Ryan & Co. for said plaintiffs through said O. W. Barrett, as agent for said defendant, and if the jury further believe from the evidence in this case, that while said policy remained in the possession of said Ryan & Co., and before the delivery thereof to said plaintiffs, said Barrett notified said Ryan & Co. of the ºcancellation of said policy, then they are instructed that the plaintiffs can not recover in this case."

This instruction the court gave to the jury after modifying it by adding thereto the following:

"But if such notice was not given until after the policy was delivered by E. E. Ryan & Co. to the plaintiffs, the plaintiffs had no knowledge that the defendant desired to cancel the policy, such notice is of no avail as a defense, unless E. E. Ryan & Co. had other authority from the plaintiffs to act as their agents than such as is to be inferred from the fact that they procured the policy, and the language of this policy. If they were general agents of the plaintiffs as to all insurance business, this notice to them was the same as notice to the plaintiffs."

The jury thereupon found a verdict for the plaintiffs and assessed their damages at $1,001.79, for which sum and costs the plaintiffs had judgment.

Messrs. HOYNE, HORTON & HOYNE for appellants; as to the right to terminate the insurance upon notice, cited Grace v. Am. Cent. Ins. Co. 16 Blatch. 433; Mellville Ins. Co. v. Collerd, 9 Vroom, 486; Wood v. Firemen's Ins. Co. 126 Mass. 319; Hartford Ins. Co. v. Reynolds, 36 Mich. 506.

The broker procuring the insurance was the agent of the assured: Ben Franklin Ins. Co. v. Weary, 4 Bradwell, 78; Lycoming Fire Ins. Co. v. Rubin, 79 Ill. 402; Hartford Fire Ins. Co. v. Reynolds, 36 Mich. 506; Standard Oil Co. v. Triumph Ins. Co. 64 N. Y. 89; Rohrback v. Germania Ins. Co. 62 N. Y. 62; Xenas v. Wickham, 106 E. C. L. 390; Anderson v. Conley, 21 Wend. 280.

Messrs. LYMAN & JACKSON, for appellees ; that there must be a tender of the unearned premium before the policy can be canceled, cited Ætna Ins. Co. v. Maguire, 51 Ill. 342; Peoria F. & M. Ins. Co. v. Botto, 47 Ill. 516.

The fact that a note is given for the premium does not absolve the insurers from refunding the unearned premium ; Home Ins. Co. v. Curtis, 5 Ins. Jour. 120; Wood v. Fire Ins. Co. 5 Ins. Jour. 120.

The policy contained a receipt for payment of premium, and the company can not contradict it : Grit v. Nat. Ins. Co. 25 Barb. 189; N. Y. Cent. Ins. Co. v. Nat. Ins. Co. 20 Barb. 486; Ill. Cent. Ins. Co. v. Wolf, 37 Ill. 354.

BAILEY, J.   The defense set up in this case is, that prior to the loss, the policy of insurance sued on was canceled by the defendant.   Whether the alleged cancellation was effectual, so as to terminate the insurance, must depend upon the interpretation and effect to be given to the conditions of the policy relating to that subject.

It was unquestionably competent for the parties, in framing their contract, to provide for the termination of the insurance at any time during the period covered by the policy, at

Newark Fire Ins. Co. v. Sammons.

the option of either party, and to prescribe the mode in which that option should be exercised.    These matters being wholly within the discretion of the parties, the language of their contract, and that alone, if free from ambiguity, must be resorted to for the purpose of ascertaining the steps necessary to make the cancellation effectual.

The policy provides that the insurance " may be terminated at any time, by request of the assured, or by the company, on giving notice to that effect." This language is entirely clear and unambiguous.  Either party desiring to terminate the insurance may do so simply by giving notice to that effect to the other party.  Nothing more is required.  It is true the contract further provides, in the same paragraph, that, on surrender of the policy, the company shall refund to the insured the unearned premium, but the return of such premium is not made a prerequisite to the termination of the insurance. That is to be paid only on production and surrender of the policy.  By notice, the insurance is terminated, and the relations of the parties are changed from that of insurer and insured to that of debtor and creditor, for the amount of the unearned premium.

In the present case, however, it clearly appears that, at the time the defendant claims to have taken the proper steps to terminate the insurance, it had received from the plaintiffs no portion of the premium, and it necessarily follows that there was none to be returned.   Ryan & Co., it is true, had in their hands the unearned premium, returned on cancellation of the previous policy, but even that was not paid over to the defendant.    There is some evidence of an arrangement between Ryan & Co. and the defendant's agent, by which the premiums on policies obtained from each other, instead of being paid over, were carried into an account which was to be settled monthly, but there is no satisfactory evidence that the premium on this policy was carried to that account, and much less is there any evidence that, at the time the notice of cancellation is alleged to have been given, the state of that account was such as to require the payment of any sum of money by the defendant's agent to Ryan & Co.   It seems en-

tirely clear, then, from every point of view, that no payment or tender of any unearned premium was necessary, but that notice alone was sufficient to work a valid cancellation of the policy.

The main controversy in the case relates to the notice by which the defendant claims to have terminated the insurance. It is not pretended that any such notice was served on the plaintiffs themselves, but the evidence tends to show that, shortly after the execution of the policy, and a considerable time prior to the loss, such notice was given to Ryan & Co. The evidence tends to show that Ryan & Co., in obtaining the policy from the defendant's agent, acted as agents for the plaintiffs; and if the notice of cancellation was served on them as such agents while the policy was in their hands, and before its delivery to the plaintiffs, or, in other words, during the existence of their agency, such notice would clearly be binding on the plaintiffs. The evidence, however, fails to show whether the notice was given before or after the delivery of the policy to the plaintiffs, and the question is thus presented whether notice after such delivery would also bind the plaintiffs. The determination of this question must depend upon the force to be given to the language of the policy itself.

The first paragraph of the condition of the policy in relation to cancellation provides that, " if any broker or other person than the assured have procured this policy, or any renewal thereof or any indorsement thereon, he shall be deemed to be the agent of the assured, and not of this company, in any transaction relating to the insurance." It seems to us very plain that the cancellation of the policy is a " transaction relating to the insurance," within the meaning of this condition. These words are certainly broad enough to include cancellation, and no language is to be found in the policy giving them a more restricted meaning. The condition is preceded by the following head-line: " 5. *Relative to issue and cancellation of policy*"—thus particularly specifying this as one of the transactions within the immediate contemplation of the parties in drafting the condition. The second paragraph of the con-

dition relates solely to that subject, and the paragraph above quoted, being a part of the same condition, the inference is irresistible, that the general words, " transactions relating to the insurance" were intended to cover all the transactions which constitute the subject-matter of the condition.

Nor are we able to perceive any reason why said condition, at least to the extent claimed in this case, is not valid and binding on the plaintiffs. If it had appeared that Ryan & Co. were in fact the agents of the defendant and not of the plaintiffs, it might be well doubted whether such a stipulation could change and reverse such existing fact. Many decisions are to be found, where, under such circumstances, stipulations of this character are held to be inoperative. But here the evidence tends to show that Ryan & Co., in soliciting and obtaining said policy from the defendant's agent, were in fact the agents of the plaintiffs, and employed by them as such, and the question is, whether a condition in the policy, by which such agency is to be deemed to continue as to all transactions relating to the insurance is valid. We are furnished with no authority, and we presume none can be found, holding that parties can not bind themselves by stipulations of this character. Parties have an undoubted right to enter into agreements as to the agencies by which their business transactions with others shall be carried on, even to the extent of making the appointment of an agent irrevocable. Such agreements are repugnant to no rule of law or public policy. Had the contract in terms constituted Ryan & Co. the agents of the plaintiffs for all purposes connected with the insurance, and provided that the policy should be canceled by giving notice to that effect to them, it appearing that they were not the agents of the defendant so as to be disqualified to act for the plaintiffs, we see no reason why such appointment would not be binding on the plaintiffs. And it makes no difference in principle, that the agents, instead of being appointed by name, are appointed by a description by which they are equally capable of being designated.

The defendant's fourth instruction, which the court refused to give was, in substance, that if the policy was procured for

the plaintiffs by a broker or other person not an agent of the defendant, and that no premium was paid to the defendant, and that the defendant gave notice to such broker or other person of the cancellation of the insurance, prior to the loss, the plaintiff can not recover. This instruction is strictly in harmony with the views above expressed and should have been given. It also follows from what we have said that the defendant's third instruction should have been given, and that the modification of the defendant's sixth instruction was erroneous. For the errors of the court in refusing the defendant's third and fourth instructions, and in giving the defendant's sixth instruction as modified, the judgment will be reversed and the cause remanded.

Judgment reversed.