Fowler Cycle Works v. Western Insurance Company of Pittsburgh, Pa.

Gen. No. 10,886.

1. INSURANCE POLICY—*when cancellation of an, is valid.* Where an agent has authority, either express or implied, to request the cancellation of an insurance policy, a cancellation by the company upon his request is valid.

2. INSURANCE POLICY—*when agent is unauthorized to cause the cancellation of an.* Generally speaking, the possession of an insurance policy by an insurance broker confers upon him implied authority to procure its cancellation, but this implication of authority is rebutted where, at the time a request for cancellation is made by such broker, the insurance company is informed that he has ceased to be the agent of the party owning the policy.

3. INSURANCE POLICY—*when agent is unauthorized to cause the cancellation of an.* Where an insurance broker has possession of a certain insurance policy belonging to another, but is the agent of such other only for the purpose of obtaining certain additional insurance and having the form of certain policies changed, he has no implied authority, notwithstanding such possession, to cause a cancellation thereof.

4. INSURANCE POLICY—*when insurance company has no power to cancel an.* An insurance company cannot cancel an insurance policy upon its own volition without the giving of notice, where such insurance policy provides for notice of intention to cancel.

Action of assumpsit upon fire insurance policy. Appeal from the Circuit Court of Cook County; Hon. ELBRIDGE HANECY, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1902. Reversed, and judgment here. Opinion filed January 19, 1904. Rehearing denied February 13, 1904.

CHARLES J. TRAINOR, for appellant.

STEIN & PLATT, for appellee.

**Statement by the Court.** This was a suit upon a fire insurance policy for $1,000, insuring appellant's bicycle factory for one year, and issued by appellee September 14, 1900. Appellee's share of a loss by fire which occurred December 14, 1900, was $863.19.

The trial court, sitting without a jury (the same having been waived by agreement of parties), rendered judgment for appellee, holding that the policy had been cancelled before the fire, to-wit, November 26, 1900. Appellant claims the cancellation was invalid and that the policy was in force. Holmes & Co. were appellee's general agents in Chicago. W. G. LeMay & Co. and A. D. Kennedy & Co. were each agents of certain other insurance companies and also insurance brokers. Up to May 1, 1900, LeMay had been connected with Kennedy in the brokerage business, but at that time opened an office on his own account. Kennedy & Co. had been placing appellant's insurance until about September 1, 1900, when appellant, which at that time was about to move its business, handed its policies to LeMay with instructions to obtain the consent of the companies that had issued them to the removal and take out new policies in place of such as to which the consent could not be obtained. Several companies refusing to consent, the policy in suit, together with some others, was issued September 14, 1900, upon LeMay's application and remained in his possession. It never was in the actual possession of appellant, and appellant did not learn that there was such a policy until after the fire.

On November 23, 1900, LeMay received the following letter from appellant:

"Nov. 23, 1900.
"MESSRS. W. G. LEMAY & Co., 184 LaSalle St., City.

GENTLEMEN: A decision has been arrived at whereby the A. D. Kennedy Co. have been given charge of all insurance, including the factory and Mr. Fowler's personal

Fowler Cycle Works. v. Western Ins. Co.

matters. We would, therefore, request that you kindly complete the work that you have undertaken on the policies in your possession at the very earliest possible moment and in regard to the policies expiring on the 27th—under the new arrangement, of course, A. D. Kennedy & Co. will take care of it.

As soon as you have everything fixed up, please deliver to A. D. Kennedy & Co., and oblige,

Yours very truly,

Fowler Cycle Works.

N. Stabler, Sec'y."

The work to be completed by LeMay, mentioned in the letter, referred to instructions previously given him by appellant to increase its insurance to $40,000, and change the form of its policies in certain respects. Appellant had given LeMay policies aggregating $31,500. After receiving the foregoing letter, he surrendered to Kennedy policies representing $20,000, saying the others had been cancelled and that he had obtained in lieu thereof new ones, including the one in suit. These he refused to give to Kennedy but told him that he, LeMay, would hand them to the companies that had issued them and Kennedy might get them there.

At the trial LeMay testified :

" I returned this policy (the one sued on) to Mr. Holmes, the agent of the defendant company. I don't know whether I took it there personally or my clerk. I know it was sent back and they were informed that the Fowler line (meaning appellant's) had been transferred to Kennedy & Co., and that I was through with it and they could cancel it so far as I was concerned, so far as our account was concerned, * * * that he could cancel the policy himself if he chose to do it. * * * I did not see Holmes personally."

The policy contained the usual clause that it might be cancelled at the request of the insured, " this company retaining the customary short rate " of the unearned premium, or that it might be cancelled by the company upon five days' notice in which case it should retain the *pro rata* premium only.

J. E. Wetsel, clerk for Holmes & Co., testified that he

received the policy from the clerk of LeMay & Co. who handed it to him " with the request that it be cancelled *pro rata*. The line of insurance had gone to A. D. Kennedy & Co. I figured the cancellation  *  *  * and returned it to the company and stamped the word 'cancelled' on the policy and application. We had an application from A. D. Kennedy & Co. for insurance on" appellant's works. "He (the clerk of LeMay & Co.) informed us at the time that the line of insurance had gone to their office.  *  *  * He said that the line had gone to A. D. Kennedy & Co. and that they were winding up their account with" appellant.  *  *  *  "I figured the return premium at *pro rata* *  *  * as a favor to LeMay & Co.  *  *  * He said that the line would revert to Kennedy & Co. and they would call for the insurance. Our object in cancelling it when he told us Mr. Kennedy was coming for it, was because at that time we were not writing bicycle factories except as an accommodation. We didn't consider them a good risk and we were renewing no policies expiring and when we cancelled we did not rewrite. We cancelled this policy at the request of LeMay & Co."

The clerk of LeMay & Co. who took the policy to the office of Holmes & Co. was not called as a witness by either side.

No notice of the cancellation of the policy was given by the appellee company to appellant.

MR. JUSTICE STEIN delivered the opinion of the court.

If LeMay had authority express or implied from appellant to request the cancellation of the policy sued on at the time the request is alleged to have been made, then the cancellation was valid and the judgment in favor of the company should be affirmed; otherwise not.

Generally speaking, possession of a policy by an insurance broker confers upon him implied authority to procure its cancellation. Newark Ins. Co. v. Sammons, 11 Ill. App. 230; Ins. Co. v. Bermond, 45 Ill. App. 22; Oil Co. v. Ins. Co., 64 N. Y. 85; Schauer v. Ins. Co., 88 Wis. 561. But that con-

sideration is not conclusive in respect of the issues in the present case. Here, appellee was informed at the very time when the request for cancellation was made that the person making it or (to speak more accurately) causing it to be made had ceased to be the agent of the party owning the policy. By this information the implication of authority arising from the mere physical possession of the policy was destroyed. If a man were to say to the representative of an insurance company, "here is a policy belonging to A, I am not his agent, but it is in my possession and I want you to cancel it," it is safe to assert that the person so addressed would refuse to comply with the request; and if he did, it is beyond all controversy that the cancellation would be void. Yet that is virtually what took place. The company through its representative was told that appellant had transferred its insurance line from LeMay & Co. to Kennedy & Co., "that the line had gone to Kennedy & Co. and they would call for the insurance."

We do not lose sight of the fact (although so far as appears the company was ignorant of it) that some limited authority was left in LeMay & Co. by the letter of November 23. They were still to complete the work of increasing appellant's insurance to $40,000, and to change the form of the policies. The proof shows, however, that the request to cancel was not made in pursuance or in execution of the power still remaining. It was not made for the purpose of increasing appellant's insurance or changing the form of any of its policies. Indeed LeMay does not so pretend. Moved as he appears to have been by a feeling of spite or vexation at the loss of appellant's business he was willing and possibly wanted to have the policy cancelled "so far as our account is concerned." The further fate of the policy seems to have been a matter of indifference to him.

It remains to be considered whether the work to be completed by him carried with it an implied authority to bring about the cancellation of the policy in suit. He himself says "at the time these policies were cancelled Kennedy & Co. were acting for" appellant; "I was not. *I did nothing*

*further for them after* I received the letter " of November 23. This is his own view. Under the letter he might have taken out further policies. It is not perceived how this gives rise to a power to do the exact opposite. He was also to procure a change in the form of appellant's policies. Clearly this applied to the policies which were handed to him when he was first employed by appellant. In the absence of proof to the contrary, it should be presumed that he took out the policy in suit (which he did subsequently) in accordance with the prescribed form. No occasion is shown or claimed to exist for having the policy cancelled in connection with any change in its form. If appellee's representative had (as he should have done) inquired of Le-May's clerk what authority he had for requesting a cancellation in view of the fact that his employer, LeMay, had ceased to be appellant's agent, and the clerk had answered that LeMay was still to increase appellant's insurance and change the form of its policies, the representative of appellee would or surely should have replied, " Yes, but that is not what you are asking me to do."

The proof tends to show and we are inclined to believe that Holmes & Co., the general agents of the company, cancelled the policy of their own volition, a thing they could not do under its terms without giving five days' notice to the insured. No notice was given. True, Mr. Holmes' clerk testified that the policy was cancelled at the request of LeMay; but this is a mere conclusion. Why the policy was cancelled and how it came to be cancelled appears from the testimony of Wetsel, clerk of Holmes & Co., when he says : " Our object in cancelling it when he (LeMay's clerk) told us Mr. Kennedy was coming for it was because at that time we were not writing bicycle factories except as an accommodation. We didn't consider them a good risk." The testimony of Mr. Holmes upon the same subject is noteworthy. Being asked whether, where a broker brings the policy in for cancellation he considered it was cancelled at the request of the insured, he answered : " In this case, I should say yes. Let me modify that—well, I should

say yes, that wherever this agent, wherever the broker who places the order with us for the insurance brings in the policy for cancellation, we cancelled the policy." Q. " And you cancelled it at the request of the insured ? " A. " That would depend." Q. " Depend upon what ? " A. " It would depend upon the circumstances." Q. " What circumstances were there in connection with this case that you cancelled it at the request of the company ? " A. " We were tickled to death to get off the risk." Q. " Did you give notice, you say ? " A. " No, sir; I say we were pleased to get off the risk." The last question but one assumes that the policy was cancelled "at the request of the company;" he does not deny the assumption, and says they were tickled to death, pleased, to get off the risk.

It should also be borne in mind that LeMay did not instruct his clerk, by whom he returned the policy to Holmes & Co., that he wanted it cancelled. His language was " he (Holmes) could cancel the policy himself if he chose to do it."

According to the terms of the policy, if cancelled at the instance of the insured, the return premium is figured at short rates; if cancelled at the instance of the company, it is figured *pro rata*. In the present case, it is figured *pro rata*, indicating that the policy was cancelled at the instance of appellee. True, Wetsel says this was done " as a favor to LeMay & Co.," but the reason he assigns for so figuring the return premium possesses as little weight and validity as the attempted cancellation. If a favor was done to any one, it would be not to LeMay & Co. but to appellant; it and it alone would receive the benefit of the greater amount paid back.

If we are correct in our conclusion that the policy was cancelled at appellee's instance, it necessarily follows, no notice thereof having been given to appellant, that it was in full force at the time of the fire.

For the reasons indicated appellant is entitled to recover. The judgment of the Circuit Court will be reversed and judgment entered here for the s m of $865.19, with interest

thereon at the rate of five per cent per annum from February 12, 1901, less the premium, $15.20, with like rate of interest thereon from November 26, 1900, a finding of facts to be embodied in the judgment.

*Reversed, and judgment here.*

Upon petition for rehearing.

Per Curiam: By the petition we are for the first time told that the abstract of the record is defective and that some of the evidence introduced by appellant was received over objection and upon promise of connection which it is now claimed was not kept, and that this and other evidence received over objection was, as counsel believe, disregarded by the trial judge.

Granting all that is claimed in this behalf, it would only affect that part of the opinion in which we held that Holmes cancelled the policy of his own volition, and not that part which holds that Holmes, having notice of LeMay's being no longer appellant's agent, could not legally cancel the policy at his request. The petition for rehearing is therefore denied.

*Petition denied.*