EL PASO REDUCTION CO. v. HARTFORD FIRE INS. CO.

(Circuit Court, E. D. Pennsylvania. April 7, 1903.)

No. 4.

1. FIRE POLICY—CANCELLATION—RETURN OF UNEARNED PORTION OF PREMIUM.

A fire policy declared that it might be canceled at any time by giving five days' notice, and then provided that, if canceled, the unearned portion of the premium should be returned on surrender of the policy. *Held*, that on canceling the policy the company was not required to return the unearned premium until the policy was surrendered.

2. SAME—FORFEITURE—SUSPENSION OF BUSINESS—PERMITS.

A fire policy covering a manufacturing establishment declared that, unless otherwise provided by agreement indorsed thereon, it should be void if the establishment ceased to be operated for more than 10 consecutive days. The establishment ceased to be operated April 20th, but permits were granted allowing this until July 20th. The fire occurred July 23d, operations not having been resumed. *Held*, that the policy was not in force.

R. Stuart Smith and Morgan & Lewis, for plaintiff.

Frank R. Shattuck, for defendant.

J. B. McPHERSON, District Judge (orally). I have considered this motion for a compulsory nonsuit, and, in my opinion, it must be granted. There may be two questions involved. The first question is whether or not the policy was canceled before the fire. The policy declares that it may be canceled at any time by the company by giving

five days' notice, and goes on to provide that, if the policy is canceled, the unearned portion of the premium shall be returned on surrender of the policy. The undisputed evidence in the case shows that this option of the company was actually exercised. I regard the letter written by their agents on this subject as the required notice of cancellation, and, as that letter reached the properly authorized agent of the plaintiff on the 17th at the latest, the policy became void on the 22d, the day before the fire. The fact that the unearned portion of the premium had not been returned at that time is, in my judgment, of no importance. The policy expressly provides that the unearned premium shall be returned "on surrender of the policy." I think these words mean exactly what they say. When the policy is surrendered, the unearned portion of the premium must be paid, but the company need not pay it before that time. The evident purpose of this provision is to compel the actual return of the written instrument, in order that it may not remain outstanding, to be a possible source of future trouble. But, whatever the purpose may have been, there is the plain contract, and it is my duty, as I think, to construe it according to its evident meaning.

If this is true, the case comes to an end at that point. But it is possible to take the view, and the plaintiff argues that it should be taken, that the correspondence between the parties was not an exercise of the option to cancel, but amounted simply to notice on the part of the company that they would exercise that option at some time in the future; in other words, was a mere declaration of intention to act hereafter on that subject. If that is true, cancellation would not have taken place. Then the second question arises upon another clause of the policy: "This policy, unless otherwise provided by agreement endorsed thereon, shall be void if the subject of insurance be a manufacturing establishment, and if it shall cease to be operated for more than ten consecutive days." This was a manufacturing establishment. It ceased to be operated some time in April, and the fire did not take place until the 23d of July. Of course, it had ceased to be operated for many more days than ten. But by proper permits of the company, attached to the policy, permission had been given to cease operations until the 20th day of July. Upon April 20th the first permit was issued: "Privilege is hereby granted to cease operations for one month from date." The effect of that was simply to extend the time of permitted idleness from ten days to one calendar month. In other words, instead of being allowed to have the plant idle for ten days, the plaintiff was allowed to have it idle for thirty days. The next permit extended the time for another month, until June 20th: "Permission to cease operations is hereby extended to June 20." Afterwards, permission was further extended to July 20th. The permission ceased upon that day, and the plaintiff's contention that the clause quoted gave a further period of ten days during which the plant might remain idle cannot be supported. Therefore, if the notice of cancellation was inoperative, it was the plain duty of the plaintiff to take steps to protect itself from the operation of the clause under consideration, and application should have been made for a further extension of permission. This was not done, and the reason is plain. At that time the plaintiff

regarded the notice of cancellation as effective, and therefore took no further steps under the policy.

A compulsory nonsuit will be entered.