TAYLOR v. INSURANCE CO. OF NORTH AMERICA.

No. 901.      Opinion Filed November 9, 1909.

(105 Pac. 354.)

1.    INSURANCE—Policy—Construction in Favor of Insured. If a policy of insurance is susceptible of two constructions, that one is to be adopted which is more favorable to the assured.

2.    INSURANCE—Policy—Cancellation by Insurer—Return of Unearned Premium. The return of the unearned premium is essential to a cancellation by the company, where the policy, among other things, provides, "when this policy is canceled by

this company by giving notice, it shall retain only the **pro rata** premium."

3.  **INSURANCE—Policy—Cancellation by Insurer—Return of Unearned Premium—Waiver—Acquiescence in Cancellation.** When a local agent for an insurance company, under instructions thereto, gives the assured notice of the cancellation of the policy, without tendering, or offering to tender, the unearned premium, and neither being authorized to make such tender nor seeking a waiver thereof, or being authorized thereto, the fact that the assured does not protest against such cancellation does neither amount to a waiver of tender nor consent to such cancellation.

    (a) The local agent being in possession of the policy as bailee for the assured, his marking the same "Canceled" and returning same to the company, without the consent or knowledge of the assured, does neither constitute a waiver or estoppel nor a consent or acquiescence.

4.  **TRIAL—Conflict in Evidence—Questions for Jury.** Where there is a reasonable conflict in the evidence, the issue must be submitted to the jury for determination.
    Dunn and Hayes, JJ., dissenting.

    (Syllabus by the Court.)

*Error from the United States Court for the Northern District of the Indian Territory; L. F. Parker, Judge.*

Action by William Taylor against the Insurance Company of North America. Judgment for defendant, and plaintiff brings error. Reversed and remanded.

*Dennis H. Wilson, Preston S. Davis,* and *T. L. Brown,* for plaintiff in error.—Citing: *Poor v. Hudson Ins. Co.,* 2 Fed. 432; *Mohr & Mohr v. Ohio Ins. Co.,* 13 Fed. 74; *Runkle v. Insurance Co.,* 6 Fed. 143; *Bingham v. Insurance Co.,* 74 Wis. 498; *Insurance Co. v. Williams et al.* (Ark.) 35 S. W. 1102; *American Express Co. v. Triumph Express Co.,* 17 Ohio St. 51; *Royal v. Aultman-Taylor Co.,* 2 L. R. A. 526; May on Insurance, vol. 1, p. 124; 19 Cyc. 643, 644.

*Fulton, Stringer & Grant* and *Burwell, Crockett & Johnson,* for defendant in error.—Citing: *Tisdell v. N. H. Fire Ins. Co.* (dissenting opinion) 155 N. Y. 163; *Schwarzschild & Sulzberger v. Phoenix Ins. Co. of Hartford,* 124 Fed. 52; 16 A. & E. Enc. L. 875; *Davidson v. Ins. Co.* (N. J.) 65 Atl. 996; *George Hotel Co.*

*v. Liverpool, L. & G. Ins. Co.,* 106 N. Y. Supp. 732; *Hillock v. Insurance Co.* (Mich.) 20 N. W. 574; *Miller v. Insurance Co.* (W. Va.) 46 S. E. 181; *Insurance Co. v. McKinnon & Call,* 59 Tex. 507; *Phoenix Mutual Fire Ins. Co. v. Brecheisen,* 50 Ohio St. 542; *Ins. Co. v. Sammons,* 11 Ill. App. 230; *Grace v. Ins. Co.,* 16 Blatchf. 433; *Ins. Co. v. Collerd,* 38 N. J. Law, 486; *Wood v. Ins. Co.,* 126 Mass. 219; *Ins. Co. v. Reynolds,* 36 Mich. 506; *Hathorn v. Ins. Co.,* 55 Barb. 28; *Hollingsworth v. Ins. Co.,* 45 Ga. 294; May on Insurance (3d Ed.) sec. 67, J.; Richards on Insurance, sec. 167; *Backus v. Ins. Co.,* 26 N. Y. App. 91, 49 N. Y. Supp. 677; *Walthen v. Ins. Co.,* 2 N. Y. App. 328, 37 N. Y. Supp. 857; *Arnfield v. Ins. Co.,* 172 Pa. St. 605, 34 Atl. 580.

WILLIAMS J. The agent of the company, in whose possession insured left the policy upon which this action was based, was named Comer. On September 26, 1904, Comer met Taylor on the streets of Claremore and said to him: "The insurance company has canceled your policy on your hay." Taylor asked him on what ground, and the agent said: "They did not state." Taylor then said: "Where is my money?" or "How about my money I have paid them, if they have canceled it? How about my money?" And the agent said: "They did not say anything about it." Taylor rejoined: "I guess I can get my money then, if they have canceled it." The agent, Comer, testified that he canceled the policy on September 26, 1904, and on that day returned the same to the company.

It is the contention of counsel for plaintiff in error that the company, under the terms of this policy, could not cancel it except that it at some time tendered or returned to him the unearned premium in accordance with what he argues are its terms, and on account of the fact that this unearned premium was neither returned nor tendered prior to October 9, 1904, that this had the effect of keeping alive the policy and rendering the company liable for the loss. The paragraph of the policy relating to cancellation is what is commonly known as the "New York standard form," and reads as follows:

"This policy shall be canceled at any time at the request of the insured, or by the company by giving five days' notice of such cancellation. If this policy shall be canceled as hereinbefore provided, or become void or cease, the premium having been actually paid, the unearned portion shall be returned on surrender of this policy or last renewal, this company retaining the customary short rate, except that, when this policy is canceled by this company by giving notice, it shall retain only the *pro rata* premium."

The construction of this contract is necessary in order to determine whether or not the policy is canceled. If the construction contended for by the defendant in error is correct, the clause was intended to read as follows:

"If this policy shall be canceled as hereinbefore provided, or become void or cease, the premium having been actually paid, the unearned portion shall be returned on surrender of this policy or last renewal, this company retaining the customary short rate, except that, when this policy is canceled by this company by giving notice (on surrender of this policy), it shall retain only the *pro rata* premium."

Without the interpolation of the words "on surrender of this policy" in the last clause, there is an ambiguity, and there is equal reason for the following interpretation:

"If this policy shall be canceled (at any time at the request of the insured), or become void or cease, the premium having been actually paid, the unearned portion shall be returned on surrender of this policy or last renewal, this company retaining the customary short rate, except that, when this policy is canceled by this company by giving notice, it shall retain only the *pro rata* premium."

When the policy is canceled by giving "five days' notice of such cancellation," the company retaining "only the *pro rata* premium," this cannot be accomplished without a tender, unless the words "on surrender of the policy" are read into said clause; and if that was the intention, why repeat the words "by giving notice"? If that contention is correct, it should have been stated as follows:

"This policy shall be canceled at any time at the request of the insured, or by the company by giving five days' notice of such cancellation. If this policy shall be canceled as hereinbefore provided, or become void or cease, the premium having been actually

paid, the unearned portion shall be returned on surrender of this policy or last renewal, this company retaining the customary short rate, except that, when this policy is canceled by this company, * * * it shall retain only the *pro rata* premium."

To say the least, the cancellation clause is ambiguous, and when we consider that the insurer was skilled, not only in the framing, but also the interpretation, of such contracts, and that the insured had no part in the framing thereof, as well as being unskilled in such interpretation, such construction should be adopted as is more favorable to the insured; and especially is this true when the construction contended for by the insurer is not only inequitable, but also unjust.

The contract of insurance here involved, known as the "New York standard policy," was framed by virtue of chapter 488, p. 720, of the Laws of New York of 1886, providing for a uniform contract of fire insurance to be used by fire underwriters within said state. The clause here under consideration was first before the Supreme Court of the state of New York in the case of *Nitsch v. American Central Insurance Company*, 83 Hun, 614, 31 N. Y. Supp. 1131, wherein a tender was construed to be necessary to the cancellation of the policy. The judgment of the Supreme Court was affirmed by the New York Court of Appeals on March 16, 1897 (152 N. Y. 635, 46 N. E. 1249). Afterward, on March 1, 1898, in the case of *Tisdell v. New Hampshire Fire Insurance Company*, 155 N. Y. 163, 49 N. E. 664, 40 L. R. A. 765 (see, also, *Id.*, 11 Misc. Rep. 20, 32 N. Y. Supp. 166), it was again held that a tender was a condition precedent to the cancellation of such a policy—the opinion being delivered by Mr. Justice Bartlett, concurred in by Justices Haight, Martin, and Vann, Chief Justice Parker and Mr. Justice O'Brien dissenting, and Mr. Justice Gray being absent. Again, in the case of *Buckley v. Insurance Co.*, 188 N. Y. 399, 81 N. E. 165, 13 L. R. A. (N. S.) 889 (see, also, *Id.*, 112 App. Div. 451, 98 N. Y. Supp. 622), the Court of Appeals, following the Nitsch and Tisdell Cases, said:

"It is a question of vital importance to the insurer and the insured as to the precise meaning of the cancellation clause in the

standard policy.  The situation is not a complicated one, and the court desires to so construe the clause that its meaning may be made clear.  If the insurance company desires to cancel, it must, as we have held in the cases cited, not only give the notice required, but accompany it by the payment or tender of the *pro rata* amount of the unearned premium.  It cannot legally demand of the insured the surrender of the policy and its cancellation until this is done."

The court was unanimous as to the foregoing conclusion.  At that time Chief Justice Cullen, and Justices O'Brien, Haight, Hiscock, Bartlett, Chase, and Vann comprised the court.

In the case of *Philadelphia Linen Co. v. Manhattan Fire Insur. Co.,* 8 Pa. Dist. R. 261, that court, after referring to the Tisdell Case, said:

"The question which is now before us was then passed upon by the Supreme Court of New York upon a policy where the language was identically the same as that which has been quoted from the defendant's policy.  The majority of the court in that case decided that, upon cancellation of the policy by the company, it must return or tender the unearned premium in order to effect a cancellation.  The same conclusion seems to have been arrived at by the same court in an earlier case, *Nitsch v. American Cent. Ins. Co.,* reported in 152 N. Y. 635, 46 N. E. 1149.  While these decisions are not binding upon the courts of Pennsylvania, they are, of course, entitled to great respect.  It is, no doubt, eminently proper to hold companies and corporations, such as insurance companies, to a strict construction of their rights as defined in formal contracts, which are prepared in their own interest and the terms of which the insured, as a rule, has little or no part in determining. This has been the policy of the courts, and has been found by experience to be necessary in order to guard the interests of those who are in many cases ignorant, and in all cases more or less at the mercy of such corporations.  The courts of this state have been moved by the same policy, and it may be, and we are inclined to think, that the attitude which has been taken by our own Supreme Court with reference to provisions not identical with, but similar to, those in question, requires us to follow the ruling which has been made in the state of New York."

In the case of *Gosch v. Firemen's Insurance Co.,* 33 Pa. Super. Ct. 496, the court said:

"The plaintiffs, then, having paid the premium for the entire term, could the defendant, at its own pleasure, effect a complete extinguishment of the insurance contract, merely by giving notice of its determination to cancel, without at the same time returning or tendering the unearned portion of that premium? Where a contract with mutual undertakings has been entered into by two parties and fully performed by one of them, we may certainly say, speaking generally, that the other party could not successfully invoke the aid of any court in an effort to rescind until he had returned or tendered the return of any valuable thing he had received by reason of the contract. To permit him to retain the benefits and at the same time repudiate the burdens of his own agreement would be highly unconscionable and shocking to our sense of natural justice. It would be out of harmony with some of the fundamental principles on which our entire system of jurisprudence is built. Of course, where the right to cancel has been expressly reserved in the contract itself, then the extent of the right and the conditions upon which it may be exercised must be determined by a reference to the contract, rather than to principles of general law. Turning, then, to the language of the agreement, in which the parties have undertaken to state their respective rights and duties, if we find it susceptible of two constructions, one in harmony with, the other in opposition to, those general principles already referred to, a sound discretion would seem to invite us to accept the former and reject the latter, just as, in ascertaining the true meaning of a doubtful clause in a will, the courts incline to that construction which would vest the estate, rather than leave it contingent, which would give the inheritance to the heir rather than to a stranger. Taking up, then, the provision of the policy on this subject, and looking at it as a whole, we may confidently say that it contemplates a complete and effective destruction of the contractual relation at the instance of either party, and that to accomplish this end the party moving must do two distinct and separate things; the object in view undeniably being that, when the cancellation shall have been completed, both parties will have been restored, as far as possible, to the conditions existing before the contractual relation began. If the destruction of this relation be begun by the assured, he must give notice to the other party and surrender his policy, which

proclaims the existence of the relation he would now destroy. If begun by the company, it must also give notice and repay or tender payment of the unearned premium in its hands. The right reserved to each party is but a single one, viz., the right to cancel; and the cancellation contemplated is not a partial, but a complete, one. The obligation imposed on the party moving to cancel is, looking broadly at the entire contract provision, also single, viz., the restoration of the other party, as far as may be, to the situation occupied before the contractual relation began. True, this involves the performance or tender of performance of another act besides the giving of notice; but it does not necessarily follow that such performance or tender may be totally dissevered in time from, and thus rendered wholly independent of, the giving of the notice. Such a construction of the policy provision, although strongly urged on us by the learned counsel for appellant, is, at best, a doubtful one. More than this he can hardly claim for it, in the light of the fact that it has been deliberately rejected by the courts of last resort of most of our sister states. The argument supporting it, as he agrees, has been stated, as forcibly as it can be, in the dissenting opinion of Chief Justice Parker in *Tisdell v. New Hampshire Fire Ins. Co.*, 155 N. Y. 163, 49 N. E. 664, 40 L. R. A. 765. An examination of this opinion seems to show that its conclusions are reached rather from a critical analysis of some of the language of the policy provision and the order in which its sentences are collated than from a broad view of the entire provision and a consideration of the nature of the object to be accomplished thereby. The following language from the majority opinion clearly indicates that the question must now be considered as settled in that jurisdiction: 'The question presented on this appeal is no longer an open one in this court. It was decided in *Nitsch v. American Central Ins. Co.*, 152 N. Y. 635, 46 N. E. 1149, affirmed in this court without an opinion. In that case, as in this one, the question presented was whether the provision of the New York standard policy of fire insurance relating to the cancellation of a policy at the instance of the company requires that, in addition to giving the five days' notice, the company must return or tender the unearned premium in order to effect a cancellation? The answer was in the affirmative.' In an elaborate discussion of the whole subject, to be found in Cooley's Briefs of Insurance, wherein all of the cases from the various jurisdictions are cited and considered, the general rule to be drawn

from them is thus stated on page 2801: 'The general rule is that under such a provision, unless waived, the repayment of such proportion of the premium is essential to a valid cancellation, and notice without such repayment or a tender of the amount is ineffectual. * * * There must be an actual repayment or tender; a mere promise to pay, a request to call for the amount due, or notice that the money is subject to insured's order, being insufficient.' "

In 33 Pa. Super. Ct. 505, the court further said:

"But we cannot regard the question as an open one, because we believe it to have been ruled in the case of *Baldwin v. Penna. Fire Ins. Co.*, 206 Pa. 248, 55 Atl. 970. In that case, the suit being on a policy similar to the one now under consideration, the company in its affidavits of defense set up 'that the policy in suit had been surrendered and returned for cancellation, and actually had been canceled on December 8, 1897.' We have not the record actually before us, but take this statement from the paper book of the appellant, which we have carefully examined. The trial court held that the contract of insurance had never been completed, and the policy had never gone into force, and on this ground nonsuited the plaintiff. This court affirmed the judgment for the same reason. But the Supreme Court held that the contract had been fully completed, and therefore the policy was in force at the time of the fire, unless it had been canceled meantime, as the company had alleged. As the case was sent back to be retried, the court could not well avoid disposing of this important defense, set up by the averment of the affidavit quoted, and we think they did it in no uncertain manner. Speaking for the court, Mr. Justice Dean, after pointing out the character of evidence necessary to show a cancellation at the instance of the insured, turns to the question now before us and says: 'The company gave no notice of its intention to cancel as required by the contract, nor did it return nor offer to return five-sixths of the premium, a preliminary to cancellation as the contract required. We can take no other view of the evidence than that the contract of indemnity was complete when Hatfield and the agent both agreed to it, and the agent, by consent of Hatfield, retained for the company the unearned premium. Was the contract afterwards rescinded or canceled by the company, or by consent of Foster, the attorney (for the insured)? The company could cancel it just one way at any time. That was by five days' notice to the representative of the estate of

its intention to do so and return of five-sixths of the premium. It gave no notice and offered to return no premium.' We are earnestly urged by the learned counsel for the appellant to regard this clear and emphatic statement of the law, upon the very point now under consideration, as merely *dictum;* but we are wholly unable to do so, in the light of the fact that the cancellation of the policy was a defense distinctly raised by the pleadings, and the further fact that in the judgment entered, in which the entire court concurred, we find the following: 'On a retrial it is directed that the law be announced as we have indicated,' etc."

In the case of *Continental Ins. Co. v. Daniel,* 78 S. W. 866, 25 Ky. Law Rep. 1501, the court said:

"The difference between the contentions of appellant and appellee is this: The appellant contends that the notice and tender must be given and made five days preceding the cancellation, which takes effect immediately. The appellee contends that the act of cancellation should take place, and notice and tender be given and made, and five days after this the cancellation takes effect, and the policy is then no longer in force. The lower court took appellee's view of the matter, and we are not prepared to say that the court erred. This provision of the policy is somewhat ambiguous. This court has repeatedly decided in such cases that the policy should be construed most strongly against the company, as it prepared it. This language of the policy seems to support the construction contended for by appellee, to wit: "This policy shall be canceled at any time * * * by the company by giving five days' notice of such cancellation. * * *' This seems to imply that the act of cancellation precedes the notice; but the cancellation is not to take effect until five days after the giving of the notice of the cancellation and the tender of the premium."

In the case of *Chrisman & Sawyer Banking Co. v. Hartford Fire Insurance Co.,* 75 Mo. App. 310, that court said:

"In the rescission of a contract by one party, it is a necessary condition precedent to such rescission to place the other party *in statu quo*—to restore to him whatever may belong to him by reason of bringing the contract to an end. This is the general rule, as applied to all cases of contract. And within this rule it has been repeatedly held that before an insurance company can make an effective cancellation it must return or tender the unearned premium. * * * In this case no attempt was made to do so.

No effort was made to ascertain what the unearned premium was, and certainly it will not be pretended that the president of the woolen mill released his claim for that. But it is said that this particular policy provided that the unearned premium was to be returned 'on the surrender of the policy.' And, as the policy was not surrendered, it was not necessary to return the premium. We think the return of the premium and the surrender of the policy, under the terms of the contract, were concurrent acts; that neither could be demanded without the other. But, as defendant was the party seeking cancellation, it was its duty first to have tendered the unearned premium on a surrender of the policy. It then would have done all that the contract required it to do in order to place the assured *in statu quo*."

In the case of *Hartford Fire Insurance Co. v. Cameron,* 18 Tex. Civ. App. 237, 45 S. W. 158, the court said:

"We think that the cancellation clause, taken as a whole, means that, when the company elects to cancel the policy, it must, upon giving notice of such intention, at the same time return or tender to the insured or his agent the unearned portion of the premium. The latter part of the clause, by providing that the company, in such cases, 'shall retain only the *pro rata* premium,' clearly implies that the other portion shall be returned; and, while it does not in turn declare when the return shall be made, it would be unreasonable and unjust to allow it to cancel its obligation and retain the consideration upon which it was based. It would be equally as unjust and inequitable to require the insured 'to dance attendance at the place of business of an insurance company, and await their pleasure,' and probably be put to his action to recover the little sum due him, the cost of which might be greater than the sum due."

In the case of *Hartford Fire Ins. Co. v. McKenzie,* 70 Ill. App. 615, the court for the Second district, in construing an identical contract, said:

"Where the company seeks to cancel the contract under such stipulation as is above set out, the insured does not have to tender his policy, in order to entitle him to receive back the unearned premium; but it is for the company desiring cancellation to seek the assured and tender the money to him, and till it does so the cancellation has not been effected."

See, also, *Peterson v. Hartford Fire Ins. Co.,* 87 Ill. App.

567; *Hartford Fire Ins. Co. v. Tewes*, 132 Ill. App. 321; *Williamson v. Warfield-Pratt-Howell Co.*, 136 Ill App. 168; *Mississippi Valley Ins. Co. v. Bermond*, 45 Ill. App. 22; *Hamburg-Bremen Fire Ins. Co. v. Browning*, 102 Va. 890, 48 S. E. 2; 2 Clement on Insurance, p. 405.

In the case of *Mississippi Fire Ass'n v. Dobbins*, 81 Miss. 630, 33 South. 506, the same character of contract is construed, and the court, going further, holds that, even in case the contract becomes void, before the company can defend, it must tender and pay over to the insured the unearned portion of the premium.

The authorities holding to the contrary are as follows: *Schwarzchild & Sulzberger Company v. Phoenix Insurance Company of Hartford*, 124 Fed. 52, 59 C .C. A. 572; Id. (C. C.) 115 Fed. 653; *El Paso Reduction Company v. Hartford Insurance Company* (C. C.) 121 Fed. 937; *Davidson v. German Insurance Company*, 74 N. J. Law, 487, 65 Atl. 996, 13 L. R. A. (N. S.) 884; *Insurance Company v. Brecheisen*, 50 Ohio St. 542, 35 N. E. 53; *Newark Fire Insurance Company v. Sammons et al.*, 11 Ill. App. 230.

Such policy being framed by virtue of the laws of New York, and the highest court of that state having interpreted same, such construction should be of most persuasive influence, if not binding with us, especially when supported by the weight of authority. *Equitable Life Assur. Soc. v. Brown*, 213 U. S. 25, 29 Sup. Ct. 404, 53 L. Ed. 682. Hence we hold that the policy was not canceled; no tender having been timely made.

2. It is further insisted that the assured consented as a matter of law that the contract of insurance should be canceled. We do not so conclude from the evidence. *Hartford Fire Ins. Co. v. Tewes*, 132 Ill. App. 321.

3. As to the question of forfeiture on account of the alleged incumbrance, that was a question for the jury; there being a conflict in the evidence thereon. The fact that a mortgage may have been made thereon and filed of record, and not canceled of record, was not conclusive. It was competent to show the mortgage

security had been changed or substituted, or that the debt had been extinguished by renewal and taking other security or payment. All these questions were for the determination of the jury.

The case is reversed and remanded, with instructions to grant a new trial.

Kane, C. J., and Turner, J., concur.

---

Dunn, J (dissenting). With the reasoning and conclusion of the majority opinion I am unable to agree. Our duty in the case is to construe a paragraph of a contract which to my mind is couched in simple, straightforward language, the meaning of which is as unclouded and clear as it is possible to be made by the use of English language, and to my mind the construction which this and some other courts have placed upon it is a perversion of the actual intention of the parties, as indicated therein. This criticism is accentuated when we find that those who draw a different conclusion than that imported by the simple language used have given as grounds reasons at variance with each other and have arrived at the conclusion reached by different routes. The question is, as is seen, whether or not an insurance company may cancel a policy which it has issued on the contract, on simple notice, without either returning or tendering the unearned premium received. One court (New York Superior Court, *Tisdell v. New Hampshire Fire Insurance Co.*, 11 Misc. Rep. 20, 32 N. Y. Supp. 166) says, in coming to the affirmative conclusion on this proposition, that although it is not within the language, yet it is to be implied; another (Court of Appeals of Kentucky, *Continental Insurance Co. v. Daniel,* 78 S. W. 866, 25 Ky. Law Rep. 1501), that the provision is somewhat ambiguous, and should be construed most strongly against the insurer; another (Court of Appeals of Missouri, *Chrisman & Sawyer Banking Co. v. Hartford Fire Insurance Company,* 75 Mo. App. 310), that a contract cannot be brought to an end by one party, except by placing the other party *in statu quo;* while another court (Pennsylvania Superior Court, *Gosch v. Firemen's*

*Insurance Co.*, 33 Pa. Super. Ct. 496) finds its justification in the theory that to support the terms of the contract would be to permit the insurance company to retain the benefits and at the same time repudiate the burdens of its agreement, which would be highly unconscionable and shocking to its (the court's) sense of natural justice. The New York Court of Appeals (*Tisdell v. New Hampshire Fire Insurance Co.*, 155 N. Y. 163, 49 N. E. 664, 40 L. R. A. 765) justifies itself by ignoring and refraining from any discussion of the terms of the contract, and asserting that the question is no longer an open one in that court; while the majority opinion of this court is based upon the propositions that the contract is ambiguous, and the construction contended for by the insurer is inequitable and unjust, and that the weight of authority supports its conclusion.

If the question before us was whether the contract was one we would recommend an insurer to enter into, or whether it would in all cases work out in an equitable and just manner between the parties, I might be able to at least concur in the conclusion reached; but this not being so, and believing as I do that courts have no power to make contracts for people, and that their duty begins and ends with their construction (*Lewis v. Commissioners of Bourbon County.* 12 Kan. 186; *Baltimore v. Baltimore & Ohio R. R. Co.*, 10 Wall. 543, 19 L. Ed. 1043), I am constrained to dissent. I yield to none in possessing a sincere regard for the administration of equal and exact justice between men, and it appeals, to me, equally with the majority of this court, that on the cancellation of this contract and a relief of its liability the insurance company should in good faith return to its customer the unearned money which it has received. But this was a proposition which addressed itself to the Legislature, providing for this contract, and the parties entering into it. The parties, being competent, in the absence of fraud, accident, or mistake, should be reciprocally bound by its terms. The rule which I here invoke finds expression in the language of Mr. Justice Davis of the Supreme Court of the United States in the case of *Baltimore v.*

*Baltimore & Ohio R. R. Co.,* 10 Wall. 543, 19 L. Ed. 1043, 1045, as follows:

"It is always competent for parties capable of entering into a business arrangement to fix the terms of it, and to declare what shall be their respective rights and liabilities under it. If the court can in any case see that this has been done, it is required to give effect to the contract which the parties chose to make for themselves, although, in the absence of a special agreement on the subject, the rule to determine the rights of the parties might be different."

To the same effect, see the cases of *Calderon v. Atlas Steamship Co.,* 170 U. S. 272, 18 Sup. Ct. 588, 42 L. Ed. 1033; *Doe v. Considine,* 6 Wall. 458, 18 L. Ed. 869.

The law of rescission is the same the world around. The sense of common justice implanted in the bosom of every being prompts him to know that in the absence of a contract, if he desires to rescind an agreement with a fellow man, he should respond to the doctrine of the Golden Rule by doing even unto an adversary as he would that he should be done by. But parties, entering into an agreement within the limits of public policy or the written law, have the right to say under what terms their relationship shall cease, and if they deliberately agree, in event of a conclusion or termination of the contractual relation, what disposition shall be made of money or property entering into it, no court has the power to say that they shall not do so. Our statute, which is merely a declaration of the common law, recognizes that which I have here asserted under the chapter on Contracts (section 98, art. 5, c. 15, par. 827, Wilson's Rev. & Ann. St. 1903), wherein it provides that rescission may be accomplished by the restoration to the other party of everything of value which he has received under the contract, except "when not effected by consent." Thus it will be seen that with the terms under which the parties may relieve themselves of the contract voluntarily entered into a court has naught to do.

The policy here in question was prepared in accordance with the statutes of New York passed in the year 1886. Prior to that time the Court of Appeals of New York had, in the case of *Van*

*Valkenburgh v. Lenox Fire Insurance Co.*, 51 N. Y. 465, and *Griffey et al. v. New York Central Insurance Co.*, 100 N. Y. 417, 3 N. E. 309, 53 Am. Rep. 202, held under the terms of the policies then before it, which provided for cancellation on the part of the company by "giving notice to that effect and refunding a ratable proportion of the premium for the unexpired term of this policy," that "where a policy of fire insurance reserves to the underwriter the right to terminate the insurance on giving notice to that effect and refunding a ratable proportion of the premium for the unexpired term, to cancel the contract it is requisite, first, that notice should be given to the assured that the insurance is terminated, not that it will be at a future day; second, that the amount to be returned should be paid or tendered to the assured. He must be sought out and tender made. Holding it subject to his call is insufficient. The underwriter must be certain, also, that the whole 'ratable proportion' is refunded. This is a condition precedent, and payment of a less sum does not terminate the insurance." *Van Valkenburgh v. Lenox Fire Insurance Co., supra.* The case of *Griffey et al. v. New York Central Insurance Co., supra,* following this case, was decided in 1885. The year following, or in 1886, the Legislature of New York provided (Laws 1886, p. 720, c. 488; Gen. Laws 1893, c. 38) for the issuance of a uniform policy by the insurance companies of that state, under the terms of which the policy in question in this case was written.

It will be noticed, on comparison, that a very material change was made in the terms of this paragraph, which is noticed by Mr. Clement in his work on Fire Insurance (volume 2, p. 405, rule 8), referred to in the majority opinion, and of this section of the policy, and of the necessity for a return or tender of the premium in order to effect a cancellation, he says:

"Notwithstanding the change in the language of the standard form, cancellation cannot be made effective by mere notice, when premium has been paid. In addition to the notice required, the insurance company is bound to seek out the insured and return or tender to him the whole amount of the unearned premium."

In support of this rule there are a great number of authorities

cited, most of which we have examined, and nearly all of which are not in point on the question before us. This author's astonishment that the change in the language in the new contract from that in contracts which had received a settled construction should have resulted in no change of meaning is manifested by the use of the word with which he begins the rule, "notwithstanding." And, indeed, may he well have been astonished; for it is the uniform rule of construction, observed by all courts, that "when any statute is revised, or one act framed from another, some parts being omitted, the parts omitted are not to be revived by construction, but are to be considered as annulled. To hold otherwise would be to impute to the Legislature gross carelessness or ignorance, which is altogether inadmissible." *Ellis v. Paige et al.*, 1 Pick. (Mass.) 43. This well-recognized and uniform rule receives the sanction in many authorities. Enlich on Interpretation of Statutes, §§ 382, 384; *United States v. Bennett*, Fed. Cas. No. 14,570; *Oxford v. Frank et al.*, 30 Tex. Civ. App. 343, 70 S. W. 426; *Pingree v. Snell*, 42 Me. 53; *Ex parte Coombs, alias Shirley*, 38 Tex. Cr. R. 648, 44 S. W. 854; *Bartlett et al. v. King*, 12 Mass. 537, 545, 7 Am. Dec. 99; *Rich v. Keyser*, 54 Pa. 86.

While, no doubt, the rule of the foregoing cases will not apply with its full force in the present instance, yet to my mind it is at least strongly persuasive. Of it Mr. Chief Justice Parker says, in his dissenting opinion in the Tisdell Case, *supra*, that "now, after these decisions were made (the Van Valkenburgh and Griffey Cases, *supra*), the cancellation clause of the present policy was prepared, and it does not seem to be an intemperate use of the imagination to draw the inference that it was prepared in view of the decisions to which I have referred, and to meet them by establishing a contract which should make cancellation by the company less difficult." In the case of *Oxford v. Frank et al., supra*, Chief Justice Conner, of the Court of Civil Appeals of the Second District of Texas, in the discussion of this proposition, said:

" 'We may concede that a repeal of a statute by implication is not favored by law. But where a new statute is passed, which is

declared in terms to be a substitute for the old, and which embraces the whole subject-matter, those parts of the old statute which are left out in the new are repealed and annulled. We must presume that such a statute was made for some purpose, and that purpose must necessarily be either the addition of some provision not in the old, or the repeal of something that is in it, or for both purposes. When, therefore, an important provision in the old statute is omitted from the new (which was intended as a substitute for the old), we must presume that the Legislature intended to repeal it, or that they were guilty of gross carelessness or ignorance, which is altogether inadmissible.' See, also, *Stewart v. Kahn,* 11 Wall. 502, 20 L. Ed. 176, in which the Supreme Court of the United States say: 'It is a rule of law that where a revising statute, or one enacted for another, omits provisions contained in the original act, the parts omitted can not be kept in force by construction, but are annulled.' "

To the same effect is the language of Chief Justice Woodward of the Supreme Court of Pennsylvania in the case of *Rich v. Keyser, supra*:

"Herein the act of 1863 plainly differs from that of 1772. Was the discrepancy accidental or intentional? The Legislature of 1863 must be presumed to have known what the language of the act of 1772 was, and what judicial construction had been placed upon it. Then, knowing this, and yet not following it, but substituting for it different language, did they not mean that we should construe their language according to its ordinary import? I see no other ground for judicial construction to rest upon. Indeed, the words of the statute, when unambiguous, are the true guide to the legislative will. That they differ from the words of a prior statute on the same subject is an intimation that they are to have a *different,* and not the *same,* construction; for it is as legitimate a use of the legislative power to alter prior statutes as to displace the common law."

The language of the cancellation clause of the policy, which existed in New York, and which had received a construction at the hands of the Court of Appeals, as is seen in the Van Valkenburgh and Griffey Cases, was, as is quoted in the opinion of the latter case, by "notice and by refunding a ratable proportion of the premium for the unexpired time." This language had received a

specific judicial construction, and it was the law of that state, and, indeed, it is the declared law of practically every state in the Union under a contract with such language. See note to case of *Davidson v. German Insurance Co.,* 74 N. J. Law, 487, 65 Atl. 996, 13 L. R. A. (N. S.) 884, 12 Am. & Eng. Ann. Cas. 1065. The opinion in the Griffey Case, *supra,* was delivered, as we have seen, in 1885. The year following the Legislature of New York provided for a uniform policy, and, with the terms of this Griffey policy before it, deliberately left out of the section providing for cancellation by notice the language relating to the refunding of the premium, which was to take place with the notice in order to effect cancellation, and passed in its place and stead a measure providing for a policy with the language of the cancellation clause such as we have before us. Now, I submit the reasoning of the high courts to which I have referred above, applied to a revising statute enacted for another, ought not to be ignored under the circumstances we find here. The reasoning is in point in principle, if not in precise fact, unless we say the Legislature could not be held to have been acquainted with the decisions of its own high court on the subject.

Now, let us look at the terms contained in this contract, and see if there exists even a remote ambiguity. It naturally divides itself into three parts, which make three separate and distinct provisions for three separate and distinct contingencies. They are as follows:

First:

"This policy shall be canceled at any time at the request of the insured, or by the company by giving five days' notice of such cancellation."

Second:

"If this policy shall be canceled as hereinbefore provided, or become void or cease, the premium having been actually paid, the unearned portion shall be returned on surrender of this policy or last renewal, this company retaining the customary short rate."

Third:

"Except that, when this policy is canceled by this company by giving notice, it shall retain only the *pro rata* premium."

These three sections, read separately or together, carry their own interpretation with them. The first sentence is complete in every particular. It takes the place and is the substitute for the old provision that the policy could be canceled by giving notice and refunding the premium, and provides clearly that either party may cancel on notice alone. The second section says that, after the policy is canceled as provided in the first sentence ("hereinbefore provided" is the language used), if the premium has been paid, the unearned portion shall be returned on the surrender of the policy, and the portion which the company shall retain shall be the customary short rate. The third subdivision contains the proviso that where the policy is canceled by the company, on notice, it shall not retain the short rate, but that it shall retain the *pro rata* premium only.

There is to my mind no room for any alleged ambiguity about the paragraph, and it is a strained and unnatural construction, and that only, which can render such simple language, conveying ideas so naturally related and in such normal sequence, indefinite or uncertain. The paragraph states three different times, as plainly as language can fix it, that the policy may be canceled on notice alone. It is in the first subdivision, in the second, and in the third. Without either of the other subdivisions, no one could controvert that the proviso of the first was for cancellation on notice. The second subdivision provides, then, that if this policy shall be canceled as "hereinbefore" provided; and the third subdivision provides that "when this policy is canceled by this company by *giving notice*." "Hereinbefore"—if there was ambiguity or uncertainty in any particular paragraph, this word alone would eliminate it. It has a settled meaning. Webster's definition is: "In the preceding part of this (writing, document, speech, and the like)." The Century Dictionary and Cyclopedia defines it: "Before in this (statement, narrative, or document) ; referring to something already named or described." And Words and Phrases, vol. 4, p. 3283, gives numerous definitions by the courts, all in accord with those of the lexicographers. So that, it is not the terms of the policy *hereinafter* pro-

vided under which the policy might be canceled, but the repayment of the premium depends upon the conditions under which the policy is "canceled as *hereinbefore* provided." Unless, then, the word "hereinbefore" can be forced to mean "hereinafter," this policy was subject to cancellation by notice alone. What the foregoing analysis of the paragraph lacks in carrying conviction, no amount of argument on my part can supply.

I incline to the view that the most weighty consideration moving this and some of the other courts in the more recent decisions to hold as they have done in this matter has been due to the belief that the weight of authority justified it. I assert, however, that the true weight of authority of those cases where the actual terms of the contract have been really and rationally considered do not support the majority opinion, but the doctrine which is here insisted on. However, be that as it may, it is not of so great consequence what the weight of authority holds on any proposition as it is where the weight of reason lies. An opinion is no authority, except it be based on reason, and an increase in the number of opinions without reason is but an increase of error. The authorities presented in the majority opinion of the court have been examined with care and detail, and they may be logically divided into three parts: First those in which the holding is *dictum;* second, those in which the discussion is illogical; and, third, where there is no discussion whatsoever. The holding in the majority of cases is unalloyed *dictum.* The question decided was not involved in the case, and hence lacks the force of an adjudication. *Rush v. French,* 1 Ariz. 99, 25 Pac. 816; *State v. Clarke,* 3 Nev. 566, 672; *Carroll v. Lessee of Carroll et al.,* 16 How. 275, 14 L. Ed. 936, 941; Words and Phrases, vol. 3, p. 2051. Of the authorities quoted from and relied upon by the court, whose holding is *dictum,* I notice the following:

*Hartford Fire Insurance Co. v. McKenzie,* 70 Ill. App. 615. In this case the notice delivered the assured of the cancellation of the policy was not received until the day after the fire, and hence, of course, the tender or return of the premium could not be involved.

In the case of *Williamson et al. v. Warfield-Pratt-Howell Co.,* 136 Ill. App. 168, 185, the court in the consideration thereof states specifically in reference to the cancellation that it does not find it necessary to consider, for "there is no cancellation provision relied upon. The cancellation claimed is an implied one, and we fail to recognize the implication." Neither does the case disclose that it presents the same or a similar policy to the one relied on in the case at bar.

The case of *Peterson v. Hartford Fire Insurance Co.,* 87 Ill. App. 567, was likewise a case where the notice was not delivered to the insured until after the fire. The court, in the consideration of the case, says: "There is no pretense that the five days' notice of intended cancellation was given by the company."

The case of *Hartford Fire Insurance Co. v. Tewes,* 132 Ill. App. 321, was likewise a case where there was no notice given the insured, and hence any holding on the question involved in this case would be no more than *dictum.*

The case of *Mississippi Valley Manufacturers' Mutual Insurance Co. v. Bermond,* 45 Ill. App, 22, does not show that the policy involved was similar to the one in the case at bar, and the question therein involved is not the same as in this case, as no premium in that case had been paid, and a provision of the policy denied its force until the premium was paid.

In the case of *Baldwin v. Pennsylvania Fire Insurance Co..* 206 Pa. 248, 55 Atl. 970, the court in the opinion says the company gave no notice of its intention to cancel as required by its contract, nor did it return or offer to return five-sixths of the premium.

The case of *Hamburg-Bremen Insurance Co. v. Browning,* 102 Va. 890, 48 S. E. 2, decides no question involved in the case at bar. The insured had been given notice of cancellation and had no credit with the company at the time of the notice. Six months thereafter loss occurred, and he sued to recover, which was denied him. The court says:

"The fire did not occur for more than six months after the

cancellation notice, at which time the policy sued on had long since lapsed by the nonpayment of premium."

The case of *Mississippi Fire Association v. Dobbins,* 81 Miss. 630, 33 South. 506, is a case where, under the terms of the policy, it was void at the time the fire occurred by reason of the violation of the terms of the contract of insurance by the assured taking out additional insurance. No premium had been paid at the time of the fire, but was paid the day after the fire. The court holds that the policy was void, but by reason of the fact that the company retained the premium paid under the circumstances mentioned held it liable on the void contract. Richards, in his work on Insurance, utters the mild criticism on this case that it "seems to have gone to yet greater extremes in favor of the insured." No question of notice under the paragraph before us was before that court.

The case of *Chrisman & Sawyer Banking Co. v. Hartford Fire Insurance Co.,* 75 Mo. App. 310, likewise did not present for the consideration of the court the question we have before us, and its holding on it was *dictum.* The defendant, before the fire occurred, directed the agent to suggest to the insured that it would have to take up the policy, and the court, in passing upon the situation presented, says that the policy was not canceled, and that there was no notice of cancellation; that what was done "was but the bare beginning of an effort, which, if proceeded with, would lead to cancellation, if nothing intervened to prevent it." This case is cited by Mr. Richards in his work on Insurance as sustaining the majority opinion of this court, and is criticised by that author by the statement that the reasoning contained in the case does not lead to the result.

In the case of *Continental Insurance Co. v. Daniel, supra,* decided in 1904, six years after the decision of the Tisdell Case, and after numerous other cases on this subject had been written by the courts of the United States, the court renders its opinion without noticing either or any of these cases, or any text of any author whatsoever. The court in that case makes such a manifest distortion of the language of this section of the policy that it finds no

sanction in the expression of any court before it was written, and no court has followed it since. Of this case Mr. Vance, in his work on Insurance, at section 183, says the construction therein made "seems to stretch the language of the condition almost beyond recognition." Yet even in that case, under the instructions of the court and the findings of the jury on the controverted questions as to the notice and tender, the question here presented was not before the Court of Appeals for determination, and its holding is *dictum*, because the fire occurred within five days after the notice was given, and even had the company given the notice and paid the money, and the insured had accepted it and delivered his policy to the company, the company would have been liable, as the policy under the terms would remain in force five days after all of these things had taken place.

The elimination of the foregoing cases relied upon by the court, on the ground that the holding is *dictum*, leaves the following: *Hartford Fire Insurance Co. v. Cameron*, 18 Tex. Civ. App. 237, 241, 45 S. W. 158, *Gosch v. Firemen's Insurance Co.*, 33 Pa. Super. Ct. 496, *Philadelphia Linen Co. v. Manhattan Fire Insurance Co. of New York*, 8 Pa. Dist. R. 261, and the New York Cases beginning with the case of *Tisdell v. New Hampshire Fire Insurance Co.*, 11 Misc. Rep. 20, 32 N. Y. Supp. 166 and the same case on appeal in the Court of Appeals, 155 N. Y. 163, 49 N. E. 664, 40 L. R. A. 765, and the case of *Buckley v. Citizens' Insurance Co. of Missouri*, 188 N. Y. 399, 81 N. E. 165, 13 L. R. A. (N. S.) 889. The Pennsylvania courts predicated their conclusion largely upon the fact that the Court of Appeals of New York in the Tisdell Case had held that the question was not an open one in that state, saying that, "while these decisions are not binding upon the courts of Pennsylvania, they are, of course, entitled to great respect." (*Philadelphia Linen Co. v. Manhattan Fire Insurance Co. of New York, supra*), and, upon the proposition in the Gosch Case that to permit one party to "retain the benefits and at the same time repudiate the burdens of his own agreement would be highly unconscionable and shocking to our sense of natural justice," and that "it would

be out of harmony with some of the fundamental principles on which our entire system of jurisprudence is built," thereby to my mind injecting into the case a proposition misleading to the court, and not germane to the subject, ignoring the contract before it for construction and the rule laid down by the Supreme Court of the United States in the case of *Baltimore v. Baltimore & Ohio R. R. Co., supra,* that it is competent for parties entering into a business arrangement to fix the terms of it, declaring what shall be their respective rights and liabilities, and that courts are required to give effect to the contract which the parties chose to make for themselves.  The error into which this court fell was practically the same one made by the court in the *Hartford Fire Insurance Co. v. Cameron Case, supra.*  This court, however, has frankly acknowledged that the cases which it cited arose on policies in which the terms of the cancellation clause clearly placed the right to cancel on the giving of notice and the returning of the unearned portion of the premium, and recognized that the first part of the clause under consideration indicated that the right to cancel was based upon the giving of the five days' notice alone, but said the difference is only a verbal one.

After the adoption of the uniform policy law by the state of New York, this section first came before the courts of that state for construction in the case of *Nitsch v. American Central Insurance Co.,* 152 N. Y. 635, 46 N. E. 1149, on December 15, 1894, which was decided without an opinion.  The next case in which it arose was in the case of *Tisdell v. New Hampshire Fire Insurance Co.,* decided in January, 1895, the report of which in the lower court is contained in 11 Misc. Rep. 20, 32 N. Y. Supp. 166.  In this case the court followed the Nitsch Case, and based its conclusion, as we have heretofore noted, upon the proposition that, although the provision does not in express terms require a tender or repayment of the premium, the condition is to be implied, and there is no discussion of the actual terms of the contract.  On appeal this case is found reported in 155 N. Y. 163, 49 N. E. 664, 40 L. R. A. 765, and here again the Court of Appeals of New York

passes the question by without discussion, with the simple state-
ment that it is no longer an open question in that court. The
question was again before the Court of Appeals of New York in
the case of *Buckley v. Citizens' Insurance Co.,* 188 N. Y. 399, 81
N. E. 165, 13 L. R. A. (N. S.) 889, and was decided upon the
authority of the Nitsch and Tisdell Cases, but without discussion
of the underlying reasons. The point is made that the court was
unanimous; but I apprehend judges frequently concur in subse-
quent opinions, even though dissenting in the one originally ren-
dered.

The case of *Equitable Life Assurance Society v. Brown,* 213
U. S. 25, 29 Sup. Ct. 404, 53 L. Ed. 682, is not applicable; for in
that case the contract was a New York contract, executed and to
be carried out therein, and as to its meaning and construction it
was held that the holding of the highest court of that state would
be of most persuasive influence, even if not of binding force, in the
absence of any federal question, while in the case at bar the con-
tract provides that it would not be valid until countersigned by the
local agent. In addition to this it was not to be carried out in New
York, nor in any of the other states which have held on the subject,
but was to be carried out in the Indian Territory. Where these
conditions exist, the place of the local agent, that being the place
where the last act necessary to complete the contract was done, is
ordinarily construed the place of the contract, and some courts
hold it conclusively so. Section 92, Richards on Insurance; *Cover-
dale et al. v. Royal Arcanum,* 193 Ill. 91, 61 N. E. 915; *Born v.
Home Insurance Co.,* 120 Iowa, 299, 94 N. W. 849; *Meyer v. Su-
preme Lodge, Knights of Pythias,* 178 N. Y. 63, 70 N. E. 111, 64
L. R. A. 839. So the New York cases can be no more than per-
suasive; and, as they do not discuss the question, their holding
could hardly be said to be this.

In the Tisdell Case, the learned jurist, Chief Justice Parker,
rendered a most vigorous dissent, which met the concurrence of
Mr. Justice O'Brien, in which the actual terms of the policy were
thoroughly and fully discussed, and which in my judgment is so

clear that it ought to carry the conviction that the language used is not susceptible to the construction placed upon it in the majority opinion. This dissenting opinion, in so far as it discussed the actual terms of the paragraph of the policy here under consideration, is as follows:

"The standard policy, of which this forms a part, has been prepared under authority of law by men experienced in insurance contracts, and it is therefore fair to assume that the agreement may be treated as one prepared by men competent to use language adequate to convey clearly and distinctly the views of the parties. In such case it is the rule that, if the language of a statute or contract, read in the order of its clauses, presents no ambiguity, courts will not attempt, through transposition of clauses or ingenious argument as to the general intent, to qualify by construction its meaning. *Doe (Poor) v. Considine,* 6 Wall. 458, 18 L. Ed. 869. The first sentence provides for the cancellation of a policy. It declares that 'it shall be canceled * * * by the company by giving five days' notice of such cancellation.' In other words, the underwriter, by its contract, reserved to itself the right to cancel the contract of insurance by a notice of five days. Nothing else is provided to be done. Notice alone shall be sufficient, says the contract. The language is unambiguous. It admits of no debate, and requires no construction. Words more apt to accomplish the cancellation of a policy by the giving of the five days' notice cannot well be imagined. Having provided for a cancellation of the policy, either by the request of the insured or upon notice given by the company, the next clause of the agreement proceeds to make disposition of the unearned premiums, in the event of the exercise of the option to cancel by either of the parties. The opening phrase of the clause shows that what follows proceeds upon the assumption that the policy shall have been canceled before occasion arises for acting under its provisions. It reads: 'If this policy shall be canceled as hereinbefore provided [referring necessarily to the company's five days' notice], the unearned portions of the premiums shall be returned.' When? At the time of the giving of the five days' notice of cancellation? Not at all. 'On the surrender of the policy' is the occasion fixed by the contract for its return. The scheme of this portion of the contract, then, is to provide, first, for the cancellation of the policy. That is to be accomplished by the simple request of the insured, if he desires to cancel it, or by a five

days' notice on the part of the company, if it desires to terminate its obligation under the policy. The policy having been put an end to by cancellation, at the insistence of one party or the other, then the situation of the parties is such that the company has in its possession certain premiums which it has not earned, and which it does not desire to earn, and the other party has in his possession the policy of insurance, no longer, of course, of use to him, and of no particular value to the company, except that, when it finally comes into the company's possession, it of itself furnishes evidence that the unearned premiums have been paid to the insured. With this situation, then, the agreement undertakes to deal, and it provides that upon the surrender of the policy the unearned premium, whether at short rate or *pro rata* premium, depending upon which party brought about the cancellation, shall be returned to the insured. Practically it says to the insured: 'You return the policy to the place where you got it from, and the company will at once turn over the unearned premium to which you are entitled under this contract.' This agreement is so clearly expressed that there does not seem to be opportunity for insisting that the language means something quite different from what is suggested to the mind upon the first reading. And still other readings will not prompt the thought that there is possibly any ambiguity. It is suggested in the opinion of the learned trial judge in the case of *Nitsch v. American Cent. Ins. Co.*, subsequently affirmed in this court without an opinion (152 N. Y. 635, 46 N. E. 1149), that, under such a reading of the contract as on its face it is apparent it should have, 'a man might pay $1,000 for insurance to-day, receive a notice from the insurance company to-morrow, which would have the effect to cancel his policy in five days, and at the ned of the week have no remedy except an action at law against the company.' Such a case could happen, undoubtedly; but it is not likely to. Courts cannot assume that insurance companies will act arbitrarily, or that they are so lacking in business prudence as to be willing to acquire a reputation for practicing a wrong of that character upon customers. On the contrary, we must assume that corporations, as well as individuals, intend faithfully to keep their contracts. But, were it our duty to indulge in a totally different presumption, the situation would not be changed; for the court is without authority to make contracts for the parties."

I believe the decided preponderance of text and judicial expression in the United States supports the conclusion reached by

Chief Justice Parker.  19 Cyc. 644; Vance on Insurance, § 183;
Richards on Insurance (3d Ed.) § 288; *Parsons & Arbough et al.
v. Northwestern National Insurance Co.,* 133 Iowa, 532, 110 N
W. 907; *Davidson v. German Insurance Co.,* 74 N. J. Law, 487,
65 Atl. 996, 13 L. R. A. (N. S.) 884, 12 Am. & Eng. Ann. Cas.
1065; *Newark Fire Insurance Co. v. Sammons et al.,* 11 Ill. App.
230; *Insurance Co. v. Brecheisen,* 50 Ohio St. 542, 35 N. E. 53;
*Schwarzchild & Sulzberger Co. v. Phoenix Insurance Co. of Hart-
ford* (C. C.) 115 Fed. 653; *El Paso Reduction Co. v. Hartford
Fire Insurance Co.* (C. C.) 121 Fed. 937; *Schwarzchild & Sulz-
berger Co. v. Phoenix Insurance Co. of Hartford,* 124 Fed. 52, 59
C. C. A. 572.  In addition to the foregoing, the cases of *Walthear
v. Pennsylvania Fire Insurance Co.,* 2 App. Div. 328, 37 N. Y.
Supp. 857, and *Buckus et al. v. Exchange Fire Insurance Co.,* 26
App. Div. 91, 49 N. Y. Supp. 677, both being cases decided by the
First Department of the Supreme Court of the state of New York,
sustain the doctrine of the foregoing authorities.

Cyc. states the doctrine as follows:

"If the policy gives the insurer the right at any time to cancel
and return the unearned premium 'upon surrender of the policy,'
or the right to cancel 'upon notice,' the return of the premium or
tender thereof is not a condition precedent."

On the same question, Vance on Insurance, *supra,* says:

"The cancellation clause of the standard form of policy seems
so clearly worded that one is surprised to see that disputes have
arisen as to its construction.  It is held by the better authority
that, after the expiration of the five-day notice required in case the
cancellation is by the company, the insurance is deemed to be ter-
minated and inoperative, without further act on the part of the
insurer or any actual cancellation of the policy.  The Kentucky
court, however, in its zeal to protect the insured, has recently de-
cided that this condition requires of the insurer desiring to ter-
minate the insurance that he shall first cancel the policy and return
the *pro rata* premium, when the insurance will be terminated after
five days' notice of such cancellation.  Such a construction seems
to stretch the language of the condition almost beyond recognition.
By the weight of authority the repayment of the unearned premium
is not, under the standard policy, a condition precedent to the ter-

mination of the insurance by the insurer. Such repayment becomes due only upon surrender of the policy. The New York Court of Appeals has, however, in a very unsatisfactory opinion, adopted the contrary rule" (referring to the Tisdell and Nitsch Cases).

A most elucidating and satisfactory discussion of the whole subject is contained in Richards on Insurance, *supra,* as follows:

"Prior to the adoption of the standard form, it was held in many decisions under an earlier clause that, in order to effect a cancellation, the company, if in receipt of the premium, must accompany its notice with a payment or tender of the unearned portion of the premium. This rule was onerous to the companies. A company has a fixed habitation and is solvent, else the insurance department would not allow it to transact business. Upon cancellation of a policy the insurer is as much entitled to a surrender of the policy as the assured is to a return of the unearned premium. The insured are scattered all over the country. Sometimes several notices must be sent before the right party can be found. Legal tender can be made only in cash. Rates of premium are so low that no company can afford, in general, to make personal tender. It is not safe to send cash by mail, and, though the assured receive the remittance, if unscrupulous, he may deny it, and, though honest, after getting his cash, he will seldom take the trouble to return the policy until it is demanded. The framers of the standard policy, therefore, inserted the seemingly unambiguous statement that the notice by itself shall cancel, but that 'the unearned premium shall be returned on surrender of this policy or last renewal.' In the opinion of some of the courts, the provision must be enforced as it reads. But, by the current of authority up to this date, the duty is laid upon the company, when seeking cancellation under the standard policy, to accompany its notice of cancellation with payment or actual tender of the return premium in order to make the notice operative. Such courts apparently consider it unconscionable to allow the company to get off the risk without simultaneously reinstating the assured, and putting him in funds with which to procure his substitute insurance. It is, indeed, difficult, however, to escape the conclusion of the dissenting judges in the New York Court of Appeals, voiced by the Chief Justice, that this is by interpretation to substitute a new contract in place of unambiguous terms adopted by the Legislature."

In my judgment, had the learned author investigated the cases

a little more closely, he would not have come to the conclusion that the current of authority to the date of his expression laid the duty on the company to tender or return the premium in addition to giving notice.

The Supreme Court of New Jersey, 16 justices concurring in an opinion (*Davidson v. German Insurance Co., supra*) reached the unanimous conclusion that, "under the cancellation clause in a standard policy of fire insurance, the company is not required to pay or tender the unearned premiums in order to bring about a cancellation of the policy."

The Federal Circuit Court of Appeals, in an opinion reported in 124 Fed. 52, 59 C. C. A. 572, affirmed a judgment rendered by the Circuit Court of the Southern District in New York, in the case of *Schwarzchild & Sulzberger Co. v. Phoenix Insurance Co.* and on the proposition before us in the syllabus said:

"Under a provision in an insurance policy giving the insurer the right to cancel the same by giving five days' notice, and requiring it to return the unearned premium in case of cancellation 'on surrender of the policy,' it is not essential to the effectiveness of a notice of cancellation by the insurer that the unearned premium be returned or tendered in advance of the surrender of the policy by the insured."

In the discussion thereof, Circuit Judge Townsend, who prepared the opinion of the court, said:

"In support of its contention counsel for plaintiff relies upon the case of *Tisdell v. New Hampshire Fire Insurance Company*, 155 N. Y. 163, 49 N. E. 664, 40 L. R. A. 765. It is true that in said case the Court of Appeals of the state of New York, by a divided court, held that such repayment was a condition precedent to cancellation. We are not unmindful of the great weight which should ordinarily be given to the decisions of said court, especially upon a question involving the construction of a form of policy fixed by the statute of said state. But in the Tisdell Case we are wholly without any sufficient or satisfactory guide as to the process of reasoning by which a majority of the court reached its conclusion. The opinion states that: 'The question presented on this appeal is no longer an open one in this court. It was decided in the case of *Nitsch v. American Central Insurance Company*, 152 N. Y. 635,

46 N. E. 1149, affirmed in this court without any opinion.' The memorandum of the decision in the Nitsch Case only shows that it affirmed a judgment of the Supreme Court, General Term, reported in 83 Hun. 614, 31 N. Y. Supp. 1131, which affirmed a judgment in favor of plaintiff entered upon a verdict directed by the trial court. Reference to 83 Hun. 614, 31 N. Y. Supp. 1131, shows that the General Term wrote no opinion. We are, therefore, without anything in the Reports to show what questions were decided, or even what issues were presented. Chief Justice Parker, however, in his dissenting opinion in the Tisdell Case, shows that the Court of Appeals was required to affirm a judgment of the General Term in the Nitsch Case upon another and unquestioned ground of waiver by defendant. In these circumstances, we are unable to accept the conclusions of the Court of Appeals in the Tisdell Case."

The Circuit Court of the Eastern District in Pennsylvania, in the case of *El Paso Reduction Company v. Hartford Fire Insurance Company, supra,* reaches the same conclusion. So that we see that the federal courts in both Pennsylvania and New York disagree from the construction placed upon this contract by the state courts in which they were located.

The Supreme Court of Ohio, discussing the same principles here involved in a contract of insurance which, while slightly differently worded, is no different in effect, in the case of *Insurance Co. v. Brecheisen, supra,* speaks as follows:

" 'This insurance may also be terminated at any time, at the option of the company, on giving notice to that effect, and when the assured shall have paid the proportion of losses and expenses due the company under the provisions of his policy, at the date of such cancellation the premium note shall be surrendered.' Under the above provisions of the policy, it is clear that the giving of the notice terminates the insurance. When the losses and expenses due the company at the date of cancellation shall be paid, the premium note shall be returned. All that the company is required to do by this contract, in order to cancel the policy, is to give notice to that effect. What follows is not a condition precedent to the termination of the insurance, but only an obligation to return the premium note upon payment of the proper proportion of the losses and expenses. No contract is found in this policy for the return of the unearned premiums as a condition precedent to the termination

of the insurance, and the rights of the parties must be determined by the contract which they have made, and not by a contract to be made for them by the court. The question in such case is, not what contract the parties should have made, nor what would be equitable, but what contract did they in fact make? Each party must stand or fall upon the written contract found in the policy."

To exactly the same effect is the language of the Court of Appeals of Illinois of the First District in the case of *Newark Fire Insurance Company v. Sammons et al., supra.* On this proposition the court said:

"It was unquestionably competent for the parties, in framing their contract, to provide for the termination of the insurance at any time during the period covered by the policy, at the option of either party, and to prescribe the mode in which that option should be exercised. These matters being wholly within the discretion of the parties, the language of their contract, and that alone, if free from ambiguity, must be resorted to for the purpose of ascertaining the steps necessary to make the cancellation effectual. The policy provides that the insurance 'may be terminated at any time, by request of the assured, or by the company, on giving notice to that effect.' This language is entirely clear and unambiguous. Either party, desiring to terminate the insurance, may do so simply by giving notice to that effect to the other party. Nothing more is required. It is true the contract further provides, in the same paragraph, that on surrender of the policy, the company shall refund to the insured the unearned premium but the return of such premium is not made a prerequisite to the termination of the insurance. That is to be paid only on production and surrender of the policy. By notice the insurance is terminated. and the relations of the parties are changed from that of insurer and insured to that of debtor and creditor, for the amount of the unearned premium."

Construing the identical policy here involved, the Supreme Court of Iowa, in the case of *Parsons & Arbaugh et al. v. Northwestern National Insurance Co., supra,* says:

"The request is all that is essential to a cancellation but the policy must be surrendered to secure the return of the unearned premium. The design of the paragraph was to enable one party to the contract to cancel it without the consent of the other, and to

this end precisely what was necessary to accomplish this result was prescribed."

As a general rule there is but little virtue in a dissenting opinion, and this one would not have been written, except I entertain the hope that by a presentation of the precise holding of the courts on this question and the real value as precedents of some of the cases, it will tend to remove, as I view it, the misconception that the weight of authority sustains the conclusion reached in the majority opinion. However, failing in this, I trust I have added a trifle to the weight of argument of those authors and courts holding that it lacks the weight of reason, which, after all is the only thing of real consequence. If the contract will, on occasion, work out inequitable and unjust results, if it can be cured, then the Legislatures or parties ought to change it. They have the right to do so. Courts lack the authority, and, exercising it, invade a domain dangerous alike to public and private weal. I therefore conclude that the judgment of the trial courts should be affirmed.

In the foregoing conclusion I am authorized to say Justice Hayes concurs.