HARTFORD FIRE INSURANCE COMPANY v. WILLIAM CAMERON.

Delivered February 19, 1898.

1. **Res Judicata—Judgment for Insurance Premiums.**

An insurance company's agent notified C. that a policy issued to him was canceled for failure to pay the premiums due thereon, and then brought suit against C. in his own name in justice court and recovered judgment there for the earned portion of the premium due to date of the cancellation, claiming that he had himself settled that amount for C. with his company under its requirements. The property having afterwards burned, C. brought suit against the company on the policy, his claim as to payment of the premium thereon being that he had settled it with the company's agent through another insurance agent. Held, that the judgment in the justice court did not determine the issue in this latter case as to the payment of the premium by C. as claimed by him.

2. **Fire Insurance—Cancellation of Policy—Return of Unearned Premium.**

Where an insurance policy provides that the company may cancel it on notice,

and that the insured shall be entitled to a return of the unearned portion of the premium paid, the company must, upon giving such notice, return or tender back the unearned premium as a condition precedent to the forfeiture by cancellation.

ERROR from Tarrant. Tried below before Hon. IRBY DUNKLIN.

*Thompson & Wood,* for plaintiff in error.

*Capps & Cantey,* for defendant in error.

HUNTER, ASSOCIATE JUSTICE.—This suit was filed January 20, 1896, by William Cameron against the Hartford Fire Insurance Company to recover on a $1000 policy of insurance on an elevator, machinery, etc., situated in the city of Vernon, Wilbarger County, Texas, the plaintiff claiming a loss during the life of the policy. The defense was that the policy was not in force at the date of the fire, because it had been canceled prior to that date. A trial was had before a jury, who returned a verdict for $1089.67, being the amount of the principal of the policy and interest thereon to the date of trial.

The policy was issued on October 1, 1894, for one year, and contained the following clause: "This policy shall be canceled at any time at the request of the insured; or by the company by giving five days notice of such cancellation. If this policy shall be canceled as hereinbefore provided, or become void or cease, the premium having been actually paid, the unearned portion shall be returned on surrender of this policy or last renewal, this company retaining the customary short rate; except that when the policy is canceled by this company, by giving notice, it shall retain only the pro rata premium."

The property was destroyed by fire May 30, 1895. Proofs of loss were made, but the company returned them, denying liability.

The record discloses that McKinney & Co. were the agents of the defendant at Vernon, and that Lorance was an agent there of other insurance companies. The plaintiff had policies on his elevator with companies whom Lorance represented, which policies were canceled. Thereupon Lorance, without consulting Cameron, it seems, applied to McKinney & Co. for this $1000 policy sued on, and it was issued to Cameron but delivered to Lorance, who in turn delivered it to Cameron, in place of the policy which had been canceled by Lorance's company. Cameron had paid Lorance for the policy which had been canceled, and when the policy in question was brought to him by Lorance, he accepted it in lieu of the one canceled, and surrendered the latter. He did not pay anything for the issuance of the policy sued on, nor did Lorance pay the premium to McKinney & Co. When Lorance requested McKinney & Co. to issue the policy to Cameron nothing whatever was said about the payment of the premium. The evidence tends to show that there was an unearned balance of premium on the canceled policy equal to the premium on the one issued by the defendant, and that the defendant's policy, as between Lorance and Cameron, took the place of the canceled

policy which Lorance took up at the time he delivered the policy issued by defendant. Cameron was not informed of the cancellation of the policy issued by Lorance until the latter brought the one issued by defendant and made the exchange.

Mr. McKinney's evidence proved that he made a report to the defendant company, in which he charged himself with the premium on the policy, but he did not remember whether he sent the cash or not. The company, however, always looked to him for the premium on this policy, as well as on all others issued by him. The company never collected from its policy holders. He was to pay the company cash for every policy he issued, and he had to account to the company for the premium, whether he collected it or not. He made monthly reports, in which he always charged himself with the premiums on all policies delivered by him, and credited the company by them. He had a right to give away a policy if he wanted to, as the company always looked to him for the premium. He had a settlement with his company in September, 1895, in which he received a credit for the unearned portion of the premium on this policy.

The evidence was conflicting as to whether McKinney looked to Lorance for the payment of the premium or to Cameron. Lorance testifies that McKinney brought the bill to him, requesting him to pay it, and that he directed him to apply certain premiums which he had collected for Lorance, and which were so applied. McKinney states that he charged the premium to Cameron and afterwards demanded it of Cameron's agent, to wit, on December 1, 1894, when the agent claimed that he had settled the premium with Lorance. On December 3, 1894, McKinney notified Cameron's agent that the policy was canceled for nonpayment of the premium, and also, upon instructions from defendant's New York office, wrote Cameron himself on February 16, 1895, to the same effect. On February 21st Cameron acknowledged receipt of the letter, but refused to agree to the cancellation unless the unearned pro rata of the premium was returned to him in cash. To this McKinney & Co. replied on February 25, 1895, that they had never received any premium, and that they would look to him for the portion of the premium earned to the date of cancellation, February 16, 1895; and soon afterwards McKinney & Co. sued Cameron in their name and recovered the amount, $14.99.

The court below correctly refused to charge that the judgment in favor of McKinney & Co. against Cameron in the justice court for the earned portion of the premium determined the issue in this case that the premium on the policy had not been paid to the company. The very fact that McKinney & Co. sued for the premium and recovered in their individual names would seem to establish that they had paid the company the premium; otherwise they could not have recovered in that case. At all events, the parties were not the same in that suit as in this, and it does not appear that the issue in that case was whether the company had received payment, but rather whether the agents, having paid

the company the premium for Cameron, were entitled to recover the amount at least of the earned portion thereof from him.

The other question raised here is whether at the time of the fire the policy had been canceled. The proper solution of this question depends upon whether the company complied strictly with the terms and ·spirit of that clause in the contract by which it reserved the right to ·cancel the same. It is contended by plaintiff in error that under this cancellation clause, which we have copied above, it is only necessary to give the insured five days notice that the policy is canceled, in order to render it void and of no further force; while the defendant in error insists that the spirit and legal meaning of this contract entitles him to a return of the unearned portion of the premium, in connection with the giving of the notice, as a condition precedent to the forfeiture of his rights thereunder.

Of course, the premium must have been paid or settled for, either to the company or to the agent, by the insured or somebody for him, before a return of the premium or any portion thereof could be demanded. But this question was properly submitted to the jury in the court's ·charge, and the general verdict for plaintiff shows that their decision of this issue was against the defendant; and the evidence, we think, fully sustains this finding. White v. Insurance Co., 120 Mass., 330; Boat Yard Co. v. Assurance Co., 118 Pa. St., 415; Insurance Co. v. Hoover, 57 Am. Rep., 511, 113 Pa. St., 591; Insurance Co. v. Kelley, 15 Am. Rep., 620, 24 Ohio St., 345; Bodine v. Insurance Co., 10 Am. Rep., 571.

We think that the cancellation clause, taken as a whole, means that when the company elects to cancel the policy it must, upon giving notice ·of such intention, at the same time return or tender to the insured or his agent the unearned portion of the premium. The latter part of the clause, by providing that the company, in such cases, "shall retain only the pro rata premium," clearly implies that the other portion shall be returned; and while it does not in turn declare when the return shall be made, it would be unreasonable and unjust to allow it to cancel its obligation and retain the consideration upon which it was based. It would be equally as unjust and inequitable to require the insured "to dance attendance at the place of business of an insurance company, and await their pleasure," and probably be put to his action to recover the little sum due him, the cost of which might be greater than the sum due. Insurance Co. v. Walker Lodge, 1 White & W. C. C., sec. 758; Insurance Co. v. McGuire, 51 Ill., 342; Van Valkenberger v. Insurance Co., 51 N. Y., 465; Hollingsworth v. Insurance Co., 45 Ga., 294; 1 May on Ins., 3 ed., secs. 67d, 67j.

It is a well settled rule in equity that one who seeks to cancel an obligation must tender back the consideration in his bill to cancel, and we see no reason why this rule should not apply in the more summary method of cancellation of the contract by giving notice. We are aware that the cases cited by us arose on policies in which the terms of the cancellation clause clearly placed the right to cancel on the giving of

notice and the returning of the unearned portion of the premium, while here the first part of the clause under consideration would indicate that the right to cancel was based alone on the giving of five days notice; but we think the difference is only a verbal one. The meaning of the two clauses is identical when read as a whole, and when considering the right of the company to cancel its obligation in cases where it has received the consideration.

We are therefore of opinion that the court did not err in refusing to submit to the jury the issue as to whether the contract had been canceled at the time of the loss, for the reason that there was no evidence of the repayment or tender of the unearned premium to the insured at the time the notice of cancellation was given.

The judgment is in all things affirmed.

*Affirmed.*