HATTIE F. BARD *vs.* FIREMAN'S INSURANCE COMPANY.

Aroostook.    Opinion December 5, 1911.

*Insurance. Cancellation of Policy. Notice. Waiver. Proof of Loss. Statute, 1905, chapter 158. Revised Statutes, chapter 49, section 4, paragraph VII.*

In the absence of consent or of waiver on the part of the insured, an agent has no power to cancel a policy of fire insurance except in the manner provided therein.

Where a policy provided for cancellation by the company after ten days from written notice, a verbal request by the agent for immediate cancellation and surrender is of no effect.

Tender of return of unearned premium under a fire policy after a loss cannot be relied upon under a provision entitling the insurer to cancel the policy on written notice and return of unearned premium.

A "waiver in pais" is a voluntary relinquishment of a known right.

Insured did not waive provision requiring insurer to give notice and tender return of unearned premium before cancelling the policy through having surrendered the policy where she did not know of such provision, and made the surrender on insured's agent's assurance that the insurance was already canceled, and that other insurance would be substituted.

Under Public Laws 1905, chapter 158, requiring proof of a fire loss to be made within a reasonable time, in determining whether a delay from November 24th to December 28th was reasonable, the conditions surrounding insured could be considered, including the facts that she had been led to believe by insurer's agent that the insurance had been validly canceled.

On motion and exceptions by defendant.    Overruled.

Assumpsit on a policy of fire insurance issued to the plaintiff for a term of two months on certain starch owned by the plaintiff and

which was destroyed by fire within the two months. Plea, the general issue with a brief statement alleging that "the insurance policy described and declared upon in the plaintiffs writ was cancelled and surrendered by mutual agreement long before the fire mentioned in said writ and causing the loss complained, occurred." Verdict for plaintiff for $628.18. The defendant filed a general motion for a new trial and also excepted to several rulings made during the trial.

The case is stated in the opinion.

*Powers & Guild,* for plaintiff.

*Madigan & Madigan, and Leonard A. Pierce,* for defendant.

SITTING: WHITEHOUSE, C. J., SAVAGE, CORNISH, BIRD, HALEY, JJ.

CORNISH, J. This is an action of assumpsit on a policy of insurance dated October 4, 1909, and issued to the plaintiff for a term of two months. The premium was paid on October 26, 1909. The property insured was destroyed by fire November 24, 1909, and proof of loss, dated December 20, 1909, was filed with the defendant December 28, 1909. The plea was the general issue with a brief statement that the policy was cancelled before the fire.

The presiding Justice ruled as a matter of law upon the evidence that the policy had not been cancelled and he submitted to the jury the determination of the single issue whether under all the circumstances of the case the plaintiff had furnished to the defendant a proof of loss within a reasonable time after the fire. The case is before this court on defendant's exceptions to the ruling of the presiding Justice on the question of cancellation, to certain instructions in regard to the proof of loss and also on a general motion for new trial on the ground that the verdict is against the evidence.

The evidence on cancellation is briefly this. The plaintiff testified that not long after receiving the policy, Mr. Perry, the defendant's agent through whom she had placed the insurance, telephoned her that he had received instructions to cancel the policy immediately and requested her to forward it to him. She replied that it did not

seem to her that he had a right to do this, and after some argument she refused to comply with his request. This conversation Perry does not deny.

On October 26th, Perry called at the plaintiff's home and asked to see four other policies that had been issued, and then took the policy in question and said that the plaintiff might as well sign it as he had cancelled it. She demurred and expressed a doubt as to his right to do this and asked, "Can you cancel that if I do not sign it?" to which he replied, "I certainly can. It is already cancelled. It is merely a matter between you and the company about this paper. I have done my duty; I have cancelled it." He then took the policy into his possession and the plaintiff asked if he could procure other insurance for her and he said he saw no reason why he could not, but that he was unable to write any policy that day because he had no blanks. It is admitted that he procured no other insurance.

Perry's version of the interview of October 26, differs somewhat though not on vital points from the plaintiff's. He says that she was not willing to have this policy cancelled unless he gave her another but he told her that he was obliged to cancel it and she finally said, "well if you have got to cancel it, why I don't suppose I can help it." He admits that he said nothing to her about her right to have ten days' written notice of cancellation, that she did not mention it, and that so far as he knew, she had no actual knowledge of that right although he himself was aware of it, and she positively and as we think truthfully, asserts that this was her first experience in matters of insurance, as her husband prior to his death had always attended to it and that she did not know that Perry did not have the power that he claimed to exercise. This brief summary gives a fair picture of the situation.

### 1.  CANCELLATION.

The burden of proving a legal cancellation in one of three ways rested upon the defendant.

First. It could be effected by mutual agreement, like the rescission of any other contract. That is not this case.

Second. It could be brought about at any time at the request of the insured, R. S., ch. 49, sec. 4. That was not done here.

Third. It could be effected by the company against the wish of the insured, and that was the action taken here, by only one method and that is the method prescribed in the policy itself. "The company also reserves the right after giving written notice to the assured . . . . and tendering to the insured a ratable proportion of the premium, to cancel the policy as to all risks subsequent to the expiration of ten days from such notice."

Two conditions precedent must be complied with, ten days' notice in writing and payment or tender of the unearned premium. The reason of these conditions is self evident; the former is designed to give the assured a reasonable time in which to procure other insurance, and the latter to place the parties in statu quo as in all other cases of rescission of contract. Neither of these requirements was met here. The only request by the agent was verbal and that for immediate cancellation and surrender, and although the assured protested against the proposition and begged the agent to procure other insurance, the protest and the request were both ignored and the agent arbitrarily cancelled the policy on the next day after he received it. The failure to comply with this condition is fatal. *Clark* v. *Insurance Co.*, 89 Maine, 26, 32.

So far as repayment or tender of the unearned premium was concerned, that was not even mentioned by the agent when the attempted cancellation took place. After the fire, however, in settling a loss under another policy the company added twelve dollars for return premium on the policy in question, which amount the insured subsequently tendered back to the agent but he refused to accept it. This return of premium by the company in itself less than was due, came too late. The fire had already occurred and as this condition had not been complied with, the policy was still in force. The tender is precedent to the right of cancellation. *Insurance Co.* v. *Botto*, 47 Ill. 516; *Insurance Co.* v. *Cameron*, 18 Tex. Co. App. 237, 45 S. W. 158; *Mohr Distilling Co.* v. *Insurance Company*, 13 Fed. Rep. 74; *White* v. *Insurance Co.*, 120 Mass. 330.

## 2. WAIVER.

The defense of waiver of these conditions by the plaintiff is not available to the defendant.

It is familiar law that a waiver in pais is the voluntary relinquishment of a known right. This was the involuntary surrender of an unknown right. Even from the agent's own testimony the policy was returned to him under protest, a protest that began when the subject was first broached by telephone and continued until the very end of the personal interview. It was in effect an enforced surrender. The agent gave the plaintiff to understand that he had already cancelled the policy and that she was obliged to turn it over. To permit this would be to allow what the standard policy of Maine and the statute positively forbid, viz., to arbitrarily and immediately put an end to the protection which the assured has against loss by fire. The agent was familiar with the requirements of the statute but he studiously avoided mentioning to the assured either her right to a ten days' written notice or the return of the premium, and that she was ignorant of these rights is apparent. It is true that she had the policy of insurance in her possession for about three weeks and parties may ordinarily be presumptively held to know the contents of a written contract into which they have entered. But this is not a conclusive presumption. If it were, the requirement as to ten days' notice would . be nugatory in a large majority of cases. The presumption is merely one of fact and the evidence here is overwhelming that the assured was in fact ignorant of the provision. It must be remembered that as the issue arises in this case, the plaintiff is not basing a right of action upon her want of knowledge, but the defendant is basing its defense upon her knowledge, and that knowledge it has utterly failed to prove. The mere possession of the policy cannot overcome the positive testimony and the surrounding circumstances.

On the question of waiver, the case of *Rosen* v. *Insurance Co.*, 106 Maine, 229, is decisive of the case at bar. The legal principles there announced are equally applicable here.

3.   INSTRUCTIONS UPON FURNISHING THE PROOF OF LOSS.

As originally enacted the Maine Standard policy required the assured to render his proof of loss "forthwith." R. S., ch. 49, sec. 4, par. VII.

By chap. 158 of the Pub. Laws of 1905, "within a reasonable time" was substituted for "forthwith." Evidently the Legislature intended that somewhat greater latitude should be allowed to the assured than would be naturally inferred from the more restricted word "forthwith" and that a reasonable time, considering all the circumstances of the case should constitute the true rule. The reason given here by the plaintiff for not furnishing the proof until December 20, was the fact that she had been led by the defendant's agent to suppose that the policy was cancelled and void at the time of the fire, and that she had no other idea until on December 19, she read in some newspaper the rescript of this court in the case of *Rosen* v. *Ins. Co.*, supra, that she at once consulted counsel and on the next day her proof of loss was made and executed. The presiding Justice instructed the jury that they might take these circumstances into consideration together with all the other circumstances of the case in reaching their conclusion. In this there was no error. It was a question of fact for the jury to determine and in deciding it they were at liberty to consider all the conditions surrounding the assured at the time when she was bound to act.

It is the opinion of the court that both the instructions and the verdict were correct.

*Motion and exceptions overruled.*