## POLEMANAKOS v. AUSTIN FIRE INS. CO.

(Court of Civil Appeals of Texas. San Antonio. Nov. 5, 1913. Rehearing Denied Dec. 3, 1913.)

1. INSURANCE (§ 244*)—CANCELLATION—RETURN OF UNEARNED PREMIUM—NECESSITY.

Under a provision of the New York standard fire insurance policy that it shall be canceled at any time by the company by giving notice of such cancellation, and that if it shall be canceled the unearned portion of the premium shall be returned on surrender of the policy, the repayment of the proper proportion of the premium, unless waived, is essential to a valid cancellation by the company, and notice

without such repayment or a tender of the amount is ineffectual.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 194, 524–530; Dec. Dig. § 244.*]

2. INSURANCE (§ 246*) — CANCELLATION BY MUTUAL CONSENT.

Regardless of the provisions of a fire insurance policy as to cancellation, the policy may be canceled by the mutual consent of the parties thereto.

[Ed. Note.—For other cases, see Insurance, Dec. Dig. § 246.*]

3. INSURANCE (§ 668*) — ACTION — QUESTION FOR JURY.

Where an insurance company gave notice that a policy was canceled without tendering the unearned portion of the premium, and insured did not object or request the return of the unearned premium but on the contrary thought the policy was canceled without such return and secured other insurance to replace that canceled, it was a question for the jury whether the policy was canceled by mutual consent.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1556, 1732–1770; Dec. Dig. § 668.*]

Appeal from District Court, Harris County; Charles E. Ashe, Judge.

Action by A. D. Polemanakos against the Austin Fire Insurance Company. Judgment for defendant, and plaintiff appeals. Reversed and remanded.

L. B. Moody, of Houston, for appellant. Wm. Thompson and Will C. Thompson, both of Dallas, for appellee.

FLY, C. J. Appellant sued appellee on two fire insurance policies, one for $1,000, the other for $1,500, insuring a certain brick house in Houston, Tex., which was consumed by fire on January 20, 1911. The defenses were that the total insurance on the building was largely in excess of its value; that the house was left vacant and was vacant at the time of the fire, and thereby the policies were forfeited; that it was provided in each of the policies, "This policy shall be canceled at any time, at the request of the insured, or by the company giving notice of such cancellation;" that on January 18, 1911, the said policies were canceled by appellee and notice thereof given to appellant on that date, and appellant had agreed to such cancellation; that appellant obtained insurance in another company in lieu of the canceled insurance, which was fully paid. Appellee tendered the unearned premiums into court. The court instructed the jury to return a verdict in favor of appellant for $13.78 unearned premiums, with interest at 6 per cent. per annum from March 18, 1911, and in favor of appellee for a surrender of the policies, which was accordingly done, and the judgment appealed from was rendered thereon.

The material evidence in the cause emanated from appellant. He testified that on January 18, 1911, an agent of appellee called him on the telephone and notified him that the insurance company had canceled his two policies. He admitted the identity of the canceled policies with those on which he had sued and admitted that he did not protest against the cancellation nor demand a return of any part of the premiums. He sought to obtain other insurance from the agent, but, failing, he applied to two other agencies and from one actually obtained $2,500 insurance. That amount was paid him by the insurance company, and in addition he had $2,500 insurance on the house in other companies. In applying for and obtaining the insurance after appellee had canceled its policies, appellant stated that he had no intention to raise his insurance to $7,500 but merely wanted to replace the insurance lost by the cancellation of the two policies. In answer to a question as to his desiring to get the new insurance to take the place of the canceled policies, he said: "I guess so, as I didn't want to cancel policies to get policies. That was my purpose, idea, and intention. When he told me he couldn't get any written for me and I told him I would see about it myself, I had the same purpose and intention in my mind. That was the same thing, and I didn't have any other purpose or intention. When Mr. Young telephoned me telling me the Austin Fire Insurance Company had directed him to cancel the two policies, these two policies I sue on here, I didn't offer any objection to him. After I had had my talk with Mr. Young on Saturday evening, I called up Mr. Dumble and asked him if he couldn't issue me some policies on this property to take the place of the ones which the Austin Fire Insurance Company canceled, and Mr. Dumble told me he didn't have any companies in his office that he could write insurance on that building in at that time without submitting it to them, and I told him that I wanted my insurance for that day, for Saturday. I think he told me something like he wouldn't be able to hear from the companies in his office about whether they would carry the policies or not before the Tuesday following. I am not sure about it. After he told me that I rang off, and then I called up the office of Torrey & Co., insurance agents, at Houston, and told them that the Austin Fire Insurance Company had canceled my two policies, and I wanted to know whether they could issue me $2,500 insurance to take the place of it." Torrey & Co. issued the policies and paid the claim after the fire. Appellant further testified: "In applying to Mr. Torrey for the $2,500 in the Pennsylvania Fire Insurance Company, I didn't have any purpose or intention to increase my insurance above the $5,000. I simply had the purpose and intention to get $5,000 insurance to take the place of the Austin Fire Insurance Company that Mr. Young had canceled; that is right."

The house was burned on the night of Sunday, January 19, 1911, the next day after the cancellation of the policies by appellee and the issuance of the policies by Torrey & Co. Several days after the fire, Young, the agent

of appellee, tendered the unearned premiums, $13.78, to appellant.

[1] The following stipulation is found in each of the two policies: "This policy shall be canceled at any time at the request of the insured, or by the company by giving notice of such cancellation. If this policy shall be canceled as hereinbefore provided, or become void or cease, the premium having been actually paid, the unearned portion shall be returned on surrender of this policy or last renewal, this company retaining the customary short rate, except that when this policy is canceled by this company giving notice, it shall retain only the pro rata premium."

The policies in question are what are known as the New York standard policies, and the general rule formulated in the consideration of the provision as to cancellation hereinbefore copied is that, unless waived, the repayment of the proper proportion of the premium is essential to a valid cancellation and notice without such repayment, or a tender of the amount is ineffectual. Planters' Ins. Co. v. Walker Lodge, 1 White & W. Civ. Cas. Ct. App. § 758; Insurance Co. v. Busby, 3 Willson, Civ. Cas. Ct. App. § 101; Hartford Fire Ins. Co. v. Cameron, 18 Tex. Civ. App. 237, 45 S. W. 158; Ætna Ins. Co. v. Rosenberg, 62 Ark. 507, 36 S. W. 908; Manlove v. Comm. Mut. Ins. Co., 47 Kan. 309, 27 Pac. 979; Van Valkenburgh v. Lenox Fire Ins. Co., 51 N. Y. 465; Griffey v. Insurance Co., 100 N. Y. 417, 3 N. E. 309, 53 Am. Rep. 202; Tisdell v. Insurance Co., 155 N. Y. 163, 49 N. E. 664, 40 L. R. A. 765; Buckley v. Insurance Co., 188 N. Y. 400, 81 N. E. 165, 13 L. R. A. (N. S.) 889; Scheel v. Insurance Co., 228 Pa. 44, 76 Atl. 507; Taylor v. Insurance Co., 25 Okl. 92, 105 Pac. 354, 138 Am. St. Rep. 906.

Construing the cancellation clause in a policy which is identical with the language of the policies in this case except that five days' notice was required in that case and no time mentioned in this, it was held by the court of Civil Appeals of the Second District (Hartford Fire Ins. Co. v. Cameron, 18 Tex. Civ. App. 237, 45 S. W. 158): "We think that the cancellation clause, taken as a whole, means that when the company elects to cancel the policy it must, upon giving of notice of such intention, at the same time return or tender to the insured or his agent the unearned portion of the premium. The latter part of the clause, by providing that the company in such cases 'shall retain only the pro rata premium,' clearly implies that the other portion shall be returned; and, while it does not in turn declare when the return shall be made, it would be unreasonable and unjust to allow it to cancel its obligation and retain the consideration upon which it was based." This construction of the cancellation clause is fully upheld by the New York and other cases cited.

In the cited case of Tisdell v. Fire Ins. Co., the New York Court of Appeals, after citing

the case of Nitsch v. Insurance Co., 152 N. Y. 635, 46 N. E. 1149, said: "In that case, as in this one, the question presented was whether the provision of the New York standard policy of fire insurance, relating to the cancellation of the policy at the instance of the company, requires that, in addition to giving the five days' notice, the company must return or tender the unearned premiums in order to effect a cancellation. The answer was in the affirmative"—citing the two cases last mentioned. The New York court in Buckley v. Insurance Co., herein cited, held: "If the insurance company desires to cancel, it must, as we have held in the cases cited, not only give the notice required but accompany it by the payment or tender of the pro rata amount of the unearned premium. It cannot legally demand of the insured the surrender of the policy and its cancellation until this is done." In the cited case of Taylor v. Insurance Co., the Supreme Court of Oklahoma reviewed a number of cases that bear upon the cancellation clause in question, and in a well-considered opinion it was held that the return of the unearned premium is essential to a cancellation of the policy by the insurance company.

There are some authorities that hold to the contrary view, consisting of three federal court decisions, a New Jersey case, and an Ohio and Illinois case. We prefer that interpretation of the cancellation clause given by New York courts and followed by a great number of the states, not only because it is reasonable, but on the grounds stated in a Pennsylvania case (Gosch v. Ins. Co., 33 Pa. Super. Ct. 496) and quoted in Taylor v. Insurance Co. by the Oklahoma court as follows: "Turning, then, to the language of the agreement, in which the parties have undertaken to state their respective rights and duties, if we find it susceptible of two constructions, one in harmony with, the other in opposition to, those general principles already referred to, a sound discretion would seem to invite us to accept the former and reject the latter just as, in ascertaining the true meaning of a doubtful clause in a will, the courts incline to that construction which would vest the estate rather than leave it contingent, which would give it to the heir rather than to the stranger. Taking up, then, the provision of the policy on this subject, and looking at it as a whole, we may confidently say that it contemplates a complete and effective destruction of the contractual relation at the instance of either party, and that to accomplish this end the party moving must do two distinct and separate things; the object in view undeniably being that, when the cancellation shall have been completed, both parties will have been restored, as far as possible, to the conditions existing before the contractual relation began."

[2, 3] There can be no doubt of the correctness of the proposition of appellee that, "re-

gardless of the provisions of a contract of fire insurance as to cancellation, the contract may be canceled by the mutual consent of the parties thereto"; but the mutual consent is a question of fact to be determined by a jury and not one of law for the court. Appellant may not have objected when he was told that the policy was canceled; he may not have requested the return of the unearned premium; he may have thought the policies were fully canceled without a return of the unearned premium; he may have secured more insurance to replace that in the two policies; he may have obtained $7,500 insurance on the house instead of $5,000; but those things did not justify the court in taking the case from the jury. The facts narrated did not, as a matter of law, constitute an agreement to set aside a solemn written clause in the policies; and, if they constituted circumstances which tended to show such agreement, the jury alone should pass upon them.

As said by the Supreme Court of Pennsylvania in the case of Scheel v. Insurance Co.: "A policy of fire insurance is a contract of indemnity, and unless it is canceled by mutual consent, or the policy provides that it may be terminated on the option of the parties and is so terminated, it will continue in force for the term for which it was written. If the right to terminate is reserved in the policy, the conditions upon which it is to be exercised must be strictly complied with; and, if a certain number of days is required before the notice to cancel is to take effect, the policy will still be in force, and cancellation will not become effective until the expiration of the time named in the notice. If the insurance company allege as to defense in an action on its policy that the assured has waived the five days' notice, or that he has replaced the policy by another policy and thereby relieved the company from liability, it is incumbent upon the company to aver in its affidavit of defense and prove on the trial, not only that such was the intention of the assured, but that his intention was carried out with his consent and by his agreement with the company. In other words, the mere procurement of another policy on the same property and for the same amount * * * does not disclose an intention on the part of the assured to cancel the earlier policy or to relieve the company from liability thereon; and, in order that it may have such effect, the company must aver and prove that the assured consented and agreed to the cancellation and the substitution of the later for the earlier." The facts in the Pennsylvania case are very similar to the facts in this case. See, also, Bard v. Ins. Co., 108 Me. 506, 81 Atl. 870, and Insurance Co. v. Clarke, 116 Md. 622, 82 Atl. 974, 39 L. R. A. (N. S.) 829, Ann. Cas. 1913D, 488.

The case of Insurance Co. v. Cameron, herein cited, is the only Texas case directly bearing on this case, and it has never been questioned in this state and has been often cited by the appellate courts of other states. In the case of Insurance Co. v. McKinnon, 59 Tex. 507, cited by appellee, the premium had not been paid, and the court held: "The premium not having been paid, there was no necessity to refund prior to the cancellation of the policy in order to confer the right to terminate the risk." So far as we have ascertained, the case has never been cited. In the case of Hotel Co. v. Home Ins. Co., 17 Tex. Civ. App. 615, 43 S. W. 1081, the court held that the premium had been returned. In the other Texas case cited (Ragley Lumber Co. v. Insurance Co., 42 Tex. Civ. App. 511, 94 S. W. 185), the cancellation was made at the instance and request of the assured, and of course it did not depend on the return of the premium.

For the error in taking the case from the jury, the judgment is reversed, and the cause remanded.