HARTFORD ACCIDENT AND INDEM-
NITY COMPANY, Appellant,

v.

Dewey SWILLEY et al., Appellees.

No. 19321.

United States Court of Appeals
Fifth Circuit.

June 22, 1962.

James W. Mehaffy, Robt. Q. Keith,
Keith, Mehaffy, McNicholas & Weber,
Beaumont, Tex., for appellant.

Alto V. Watson, D. H. O'Fiel, Watson
& Selman, Beaumont, Tex., for appellee.

Before TUTTLE, Chief Judge, and
HUTCHESON, and WISDOM, Circuit
Judges.

WISDOM, Circuit Judge.

The question for decision is whether a
policy of automobile liability insurance
was properly cancelled when the insurer,
in mailing the notice of cancellation to
the insured, omitted the insured's county
of residence from his otherwise complete
mailing address.

Dewey Swilley and his sons, Ronald
and Ricky, were driving through Bon
Weir, Texas, December, 22, 1959, when
the automobile in which they were driv-
ing was struck from behind by an auto-

mobile owned by J. W. Hughes and driven by J. D. Jones. Swilley and his sons were severely injured. They sued Hughes and Jones in the United States District Court for the Eastern District of Texas, basing diversity jurisdiction on their Louisiana residence and the defendants' Texas residence. The Hartford Accident & Indemnity Company intervened in the trial, seeking a declaratory judgment that it had cancelled its liability policy on Hughes's car before the accident occurred. The trial court gave judgment for the plaintiffs on the ground that Jones's negligence caused the accident, a decision not appealed. The court held also that the insurer had not cancelled the insurance policy, since the notice of cancellation mailed to Hughes had not been accurately addressed and since the company had failed to return to Hughes the unearned portion of the insurance premium. We reverse.

The facts concerning the alleged cancellation are not disputed. May 14, 1959, Hughes purchased a one-year automobile liability insurance policy from the appellant providing coverage up to $5,000 for each person and $10,000 for each accident. A declaration in the policy listed the assured and his address as:

"James W. Hughes, Bon Weir, Newton County, Texas"

The cancellation provision in the policy stated:

"This policy may be canceled by the insured named in Item 1 of the declarations by surrender thereof to the company or any of its authorized agents or by mailing to the company written notice stating when thereafter the cancelation shall be effective. This policy may be canceled by the company by mailing to the insured named in Item 1 of the declaration of the address shown in this policy written notice stating when not less than 10 days thereafter such cancelation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice. The time of the surrender or the effective date and hour of cancela-

tion stated in the notice shall become the end of the policy period. Delivery of such written notice either by such insured or by the company shall be equivalent to mailing.

"If such insured cancels, earned premium shall be computed in accordance with the customary short rate table and procedure. If the company cancels, earned premium shall be computed pro rata. Premium adjustment may be made either at the time cancelation is effected *or as soon as practicable after cancelation becomes effective*, but payment or tender of unearned premium is not a condition of cancelation."

In August 1959 the insurance company decided to cancel Hughes's policy. August 18 it mailed a notice of cancellation to "James W. Hughes, Bon Weir, Texas," declaring the policy cancelled, effective August 30. Apparently, Hughes never received this notice. The company calculated the unearned portion of the premium and, following its usual practice, notified its local agent in Texas that it was cancelling Hughes's policy and crediting the agent with the unearned premium. In September the local agent notified the broker, through whom Hughes had purchased the insurance policy, of the cancellation, and the agent credited the broker with the unearned premium, on the understanding that the broker would transmit the funds to Hughes. A representative of the company stated that the company used this method of returning the premium to the insured since it also cancelled out the commissions that had been credited to the agent and broker when the policy was originally purchased. The agent stated that he later found out that the broker had not sent any money to Hughes. At the end of the year the agent closed his account with the broker and paid him a sum that included the credit due on the Hughes policy. The broker did not actually transmit the unearned premium to Hughes until January 6, 1960, more than two weeks after the accident and over four months after the alleged cancellation of the policy.

## I.

The appellant contends that the cancellation was ineffective because the words "Newton County" were omitted from the address of the cancellation notice mailed to Hughes August 18. It is agreed that under the terms of the contract the company was empowered to cancel the policy by mailing a notice to the insured and that such notice would effect a cancellation irrespective of whether the insured actually received it. The company was obliged, however, to send the notice to insured's address as declared in the policy.

In U. S. Liability Insurance Company v. Baggett, Tex.Civ.App., 1955, 285 S.W. 2d 804, on which the appellant primarily relies, the insurance company mailed a notice to an insured at P. O. Box 393 rather than at P. O. Box 383 in Maud, Bowie, Texas. This deviation from the address stated in the policy was held to invalidate the notice even though the insurance company introduced a receipt from the post office which corrected the error and showed the insured's address as P. O. Box 383. The Baggett case, however, is distinguishable from the one at bar since there the company's deviation potentially could have reduced the likelihood of the notice being successfully delivered to the insured. Here by contrast the deviation could not have endangered delivery, since the undisputed evidence shows that there is a post office in "Bon Weir, Texas" which is in Newton County and that there is no other post office in Texas named "Bon Weir". "Newton County" therefore was an entirely superfluous and unnecessary part of the address. Duff v. Secured Fire & Marine Ins. Co., Tex.Civ.App., 1949, 227 S.W.2d 257 is squarely in point. In that case the insured stated his address as "47th Bomb Group, Biggs Field, El Paso, El Paso County, Texas." The insurance company mailed a cancellation notice to him at "47th Bomb Group, Biggs Field, Texas." Taking note of the strict requirement that the insurer address the notice correctly, the court held that this address was sufficient on the ground that

there was only one post office named "Biggs Field, Texas." The court held:

"[U]nder the facts of this case the addition of the words 'El Paso, El Paso County' would have added nothing to insure delivery of the notice to the insured. The delivery contracted for was to the post office —not to the insured. Any reasonably intelligent post office employee reading the address would know that the envelope which contained the notice was intended for the post office at Biggs Field in El Paso County."

The court distinguished two other cases (including one relied on by the insured in this case), stating: "In both of these cases the omitted portion of the address had a material bearing on the delivery of the notice to the insured. Such is not true here." 227 S.W.2d at 259.

This Texas decision, which is binding on us under the rule of Erie Railroad Co. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, is supported by sound reason. It must be remembered that as a practical matter the declaration of address is nearly always made by the insured through the completion of a form obtained from the company. The forms call for the insured to list his county since in some instances that may be significant, but in many cases it will be a useless appendage to the address. In such cases an insurer's omission of unnecessary parts of the address does no harm to the insured. Where the omitted portions of the address have no material bearing on delivery, the insured has no basis to complain that the insurance company failed to comply with its obligations. The Fourth Circuit followed Duff in Riddick v. State Capital Insurance Company, 4 Cir., 1959, 271 F.2d 641. We follow it here, and hold that the appellant's mailing of the notice to Bon Weir, Texas was effective to cancel the policy.

## II.

As an alternative basis for its decision that the insurer continued to be

liable on the Hughes insurance policy after the attempted cancellation, the trial court found that the company had not met a condition precedent for a valid cancellation because of its failure to return to Hughes the unearned portion of the premium. The court stated that this failure also estopped the appellant from asserting cancellation as a defense. The estoppel ruling may be quickly disposed of. An estoppel arises from a misrepresentation by one party on which another party relies to its detriment. Here the insurance company made no misrepresentation. Its local agent declared in unequivocal and uncontradicted testimony that he told Hughes that his auto insurance policy "had been canceled" and discussed with Hughes other arrangements to obtain insurance. There is no suggestion in the evidence that Hughes interpreted the company's failure to return the unearned portion of his premium as an indication that the company intended to continue his policy in effect. There is therefore no basis for asserting an estoppel.[1]

The question whether a return of the premium is necessary as a legal condition to a valid cancellation raises a knottier problem. A long line of Texas decisions holds that return of the premium is a condition precedent to cancellation. Unlike the policies involved in those cases, however, the Hughes insurance policy expressly provides that return of the unearned premium is *not* to be a condition to cancellation. The question presented is whether the Texas decisions represent merely a rule of construction that can be rendered inapposite by an express declaration to the contrary or whether they express a state policy overriding any conflicting provisions in the contract. We conclude that they are no more than a rule of construction.

The appellee relies heavily on Hartford Fire Ins. Co. v. Cameron, 1898, 18 Tex. Civ.App. 237, 45 S.W. 158. There the insurance company had attempted to cancel a policy but had not returned the unearned portion of the premium before an accident occurred. A provision of the policy gave the company the right to cancel it by sending notice to the insured and an immediately following sentence provided that in the event that the company did cancel the policy it would retain only the earned pro rata portion of the premium. The court held that this provision imposed the duty of returning the unearned portion of the premium as a condition to cancellation. It stated: "[W]hile it does not in terms declare when the return shall be made, it would be unreasonable and unjust to allow it to cancel its obligation, and retain the consideration upon which it was based. It would be equally as unjust and inequitable to require the insured 'to dance attendance at the place of business of an insurance company, and await their pleasure.'" The appellee argues that this language indicates that the court based its decision not on the company's contractual obligation but on its duties arising from equity. It is significant, however, that although the court refers to consideration of equity and fairness, it does so within an inquiry of contractual interpretation. The court stated clearly: "The proper solution of this question depends upon whether the company complied strictly with the terms and spirit of that clause in the contract by which it reserved the right to cancel the same." 45 S.W. at 159, 160. While the court indicated its readiness to interpret the contract strictly in favor of the insured and demand exact compliance from the company, it did not attempt to overrule explicit contractual provisions on the basis of state policy. Nor has any sub-

---

1. This case stands in contrast to certain other Texas cases where the actions of the insurance company and its agents did give the impression to the insured that a policy allegedly cancelled was to be continued. Texas Co. v. Tunnell, Tex. Civ.App., 1933, 62 S.W.2d 171; Bailey v. Sovereign Camp, W. O. W., Texas, 1926, 116 Tex. 160, 286 S.W. 456, 288 S.W. 115, 47 A.L.R. 876.

sequent decision done so. See U. S. Insurance Company v. Brown, Tex.Civ. App., 1955, 285 S.W.2d 843 and the cases cited therein at 847.[2]

These cases follow the doctrine that the terms of a printed contract shall be construed strictly against its author, but they go no further. They rest directly on an ambiguity or uncertainty in the contract's stated terms. Here, on the other hand, there is a flat statement in the contract that expressly negatives the interpretation urged by the appellee. To overrule this provision would be to take a novel step for which we know of no precedent in the law of Texas, or, for that matter, in the law of any other state. We believe that the reasons underlying the rules of construction applied to ambiguous contracts fall short of establishing a state policy that would justify the disregard of an explicit contract provision. This conclusion is in accord with the decisions of other courts which have faced this same question. Woodard v. Calvert Fire Ins. Co., Ky. Ct.App., 1951, 239 S.W.2d 267.[3]

We find no basis on which to uphold the decision below that the appellant failed to make an effective cancellation of the insurance policy issued to James Hughes. The appellant was entitled to a declaration that it is not liable on that policy. The decision below is

Reversed.

2. The appellant emphasizes the decision in Insurance Company of Texas v. Parmelee, Tex.Civ.App., 1955, 274 S.W.2d 944, which on the basis of decisions from other states held that return of the unearned premium was not a condition to cancellation under the terms of a contract which did not deal with the question specifically one way or the other. Considering the stream of Texas decisions that have reached the opposite conclusion on the basis of similar or even identical provisions, we cannot take the Parmelee decision as an accurate reflection of Texas law. See the discussion of Parmelee in U. S. Insurance Company v. Brown, Tex. Civ.App., 1955, 285 S.W.2d 843, 847–848. Nevertheless, whether that decision be regarded as a crack in the foundation of the Texas rule or as only a maverick straying from the Texas pasture, it weakens the springboard from which

the appellee attempts what we view as an impossible leap.

3. In Woodard the court stated:
"The contract expressly gives the Insurance Company the right to cancel upon notice; return of the unearned premium is treated separately, and may take place as soon as practicable or within a reasonable time after notice of cancellation is delivered. Where, as here, there is no statute governing the particular type of insurance or requiring a different result. courts have generally enforced the terms of the policy contract as drawn, and have permitted the insurer to cancel upon proper notice without return of the unearned premium as a condition precedent." Woodard v. Calvert Fire Ins. Co., 1951, Ky.Ct.App., 239 S.W.2d 267, 269.